MATTER OF LOZA-BEDOYA

In DEPORTATION Proceedings

A-7985292

*Decided by Board November 19, 1964*

(1) Respondent, who did not have pending on the effective date of the Immigration and Nationality Act an application for seventh proviso relief, is now ineligible for a *nunc pro tunc* waiver of such relief since the seventh proviso to section 3 of the Immigration Act of February 5, 1917, as amended, neither conferred status nor conveyed rights and, therefore, did not come within the savings clause (section 405(a)) of the 1952 Act.

(2) Respondent, who, following deportation in 1962, was absent from the United States for two weeks during the statutory period of required continuous physical presence, broke the continuity of such physical presence and, therefore, is ineligible for suspension of deportation under section 244(a)(1) of the 1952 Act, as amended.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection.

This is an appeal from the order of the special inquiry officer finding respondent deportable on the ground stated above and denying his applications for relief except the one for voluntary departure. The appeal will be dismissed.

Respondent, a 35-year-old married male, a native and citizen of Mexico, believes he is eligible for the legalization of his entry because of his long residence in the United States. His residence, started by illegal entry in 1944, was interrupted by his deportation in July 1953; it was resumed by his illegal return about August 1953, and except for a short visit to Mexico in 1955 and in 1957 was maintained until he was deported on March 8, 1962. About two weeks later he again entered illegally. His wife, a United States citizen residing in the United States whom he married in 1961, sought her Congressman's help in obtaining legal residence for the respondent. In August 1962, the Congressman advised her by telegram to have respondent proceed immediately to the American Consulate in Mexico. Respondent ap-

parently followed the advice and for about the next eight months stayed in Mexico apparently in the hope of obtaining a visa. The American Consul ultimately denied respondent's application for a visa, apparently finding that his conviction in 1951 for assisting the unlawful entry of Mexican nationals brought him within section 212(a)(31) of the Act which makes ineligible for the issuance of a visa, an alien who for gain encouraged another alien to come to the United States illegally; the respondent returned illegally on May 3, 1963 to join his family. On November 19, 1963 he was convicted for having entered the United States without permission after having been deported. In the present deportation proceedings, respondent is charged with being deportable as one who had entered the United States without inspection on May 3, 1963.

Respondent admitting that he is deportable as charged, but pointing to his domicile in the United States since 1944, to the extreme hardship deportation would bring to him, his wife and his children who are all dependent upon him, and pointing to the fact that he is a responsible self-employed member of the community, urges that his stay be legalized. He believes several laws exist under which this legalization can be accomplished.

We do not believe the respondent is eligible for relief under any of the laws relied upon. The first contention couples section 212(c) of the Act and its predecessor, the 7th proviso to section 3 of the Act of February 5, 1917. Section 212(c) of the Act authorizes the admission of an inadmissible alien returning to a *lawful* residence; the 7th proviso authorized the same relief (except as to documentary grounds) to an alien with seven years' residence whether the residence was lawful or not. Counsel contends that respondent had been eligible for relief under the 7th proviso, that he, therefore, had a right which was saved by section 405(a) of the Immigration and Nationality Act and that the 7th proviso can now be used to legalize his residence as of December 24, 1952 when the Immigration and Nationality Act took effect. The contention continues: Respondent's residence having thus been legalized, he is eligible for relief under section 212(c) of the Act and by virtue of its provisions can be considered as having been lawfully admitted upon the occasion of each of his returns from Mexico and, therefore, considered not deportable. The contention must be rejected. Even if 7th proviso relief could be granted *nunc pro tunc,* it would not be of avail to respondent because it could not cure the lack of documents which made him inadmissible to the United States on the occasion of each of his entries (*Matter of L—*, 4 I. & N. Dec. 463). Moreover, respondent had no application pending under the 7th proviso during the time it was in existence; the 7th proviso itself conveyed no rights and conferred no status; it, therefore, did

not come within the savings clause (*Cadby* v. *Savoretti*, 256 F. 2d 439 (5th Cir., 1958)). Since respondent is not a lawful resident of the United States he could not be granted relief under section 212(c) of the Act.

On August 11, 1964, the special inquiry officer considered respondent's application for suspension of deportation under section 244(a) (1) of the Immigration and Nationality Act (8 U.S.C. 1254(a)(1), Supp. V) and denied it on the ground that the respondent who had been outside the United States for two weeks after his deportation on March 8, 1962, on visits to Mexico in 1955 and 1957, and from August 1962 to May 1963, could not establish, as he was required to by the Act, that he had "been physically present in the United States for a continuous period of not less than seven years immediately preceding the date" of his application. In denying the application, the special inquiry officer followed the Board's rule that any voluntary absence destroys the continuity of residence required by the statute. Counsel, however, contends that the respondent's departures from the United States did not interrupt the continuity of his physical presence as that term is defined in the case of *Wadman* v. *Immigration and Naturalization Service*, 329 F. 2d 812 (9th Cir., 1964).

Whether or not the *Wadman* rule applies to one like the respondent whose original entry was unlawful has not been clarified; however, assuming that an alien could come within the *Wadman* rule although he entered illegally, we do not believe the respondent can profit thereby because his absence in 1962 was the result of a deportation and we do not believe that *Wadman* can be extended to include such an absence. The Supreme Court, considering the effect of an absence under an order of deportation, of one who returned and applied for discretionary relief which required him to establish that he had resided "continuously" in the United States for a certain period, stated "* * * one who has been deported does not continue to have his residence here, whatever may be the significance of other factors in the absence of a valid deportation. * * * It would be quite impossible to consider that a deported alien, whose reentry into this country within a year of deportation would be a felony, nevertheless continues to reside in this country." *Mrvica* v. *Esperdy*, 32 L.W. 4289, 4291-2, March 30, 1964.

The pivotal nature of the 1962 deportation has brought it under attack by counsel. Counsel contends that there was a lack of due process in the deportation proceeding in that the respondent was not advised of his right to apply for discretionary relief. The regulation required the special inquiry officer to inform an alien of his "apparent" eligibility to apply for relief (8 CFR 242.17). We do not have a copy of the hearing which resulted in the deportation order of March

8, 1962; however, even if counsel is right that respondent was not notified of suspension of deportation, we would not find that serious error was committed because there was no obligation upon the special inquiry officer to inform the respondent who appeared to be ineligible for suspension of deportation at that time. Prior to the decision in *Wadman* on March 26, 1964 it was the rule that an alien who had voluntarily left the United States temporarily could not be considered as physically present in the United States for the continuous period required for suspension of deportation (*Arrellano-Flores* v. *Hoy*, 262 F.2d 667 (9th Cir., 1958); see *Montalban* v. *Rogers*, 262 F.2d 923 (CADC, 1959); *U.S. ex rel. Bruno* v. *Sweet*, 133 F. Supp. 3, 6–7, W.D. Mo. (1955), aff'd without passing on point 235 F.2d 801 (8th Cir., 1956)). At the time of the hearing, respondent having been absent from the United States on three occasions in the ten-year period for which he would then have to establish continuous physical presence (sec. 244(a)(4) of the Act; 66 Stat. 214) one absence having been the result of a deportation (1953) was not considered eligible for suspension of deportation. Since there was no apparent eligibility, there was no obligation on the part of the special inquiry officer to inform the respondent of the right to apply for suspension of deportation.

Respondent has failed to establish he is eligible for relief which will permit him to remain in the United States.

Respondent takes issue with the special inquiry officer's denial of his application for permission to reapply for admission to the United States after arrest and deportation. The special inquiry officer has pointed out the grant of relief would be a useless gesture since the respondent is ineligible for the issuance of a visa. The application was properly denied.

Since the consul refuses to issue a visa to respondent and since he is ineligible for adjustment under the immigration laws, it would appear that only Congress, if it so desires, can help respondent adjust his status to that of a lawful permanent resident.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.