**GIT FOO WONG, also known as Chuck Sen Wong, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 20133.**

United States Court of Appeals
Ninth Circuit.

March 16, 1966.

Joseph S. Hertogs, Jackson & Hertogs, San Francisco, Cal., for petitioner.

Manuel L. Real, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty. Chief, Civ.Div., Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Git Foo Wong, petitioner herein, entered the United States illegally in 1951 at about the age of 15 years, falsely claiming to be the son of a United States citizen. Petitioner has been continuously present in this country from that time except that in November, 1961, while living in Santa Paula, California,[1] he drove to Mexico for a Sunday sightseeing trip, remaining there about two hours, and was then readmitted to this country as a United States citizen. In 1962 he voluntarily appeared before the Immigration and Naturalization Service and confessed he was illegally in the United States. Deportation proceedings were then commenced against him. In these proceedings petitioner admitted deportability and applied for suspension of deportation under section 244 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1254.[2] The special inquiry offi-

---

1. At least 225 miles north of the border.

2. § 1254. Suspension of deportation—Adjustment of status for permanent residence; contents

   (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

cer held that petitioner was not eligible for suspension of deportation because by reason of the two-hour trip to Mexico he had not been "physically present in the United States for a continuous period of not less than seven years" as required by the Immigration and Nationality Act, § 244(a), 8 U.S.C. § 1254(a). The evidence of record established also that the petitioner was inducted in the United States Army in California on August 8, 1958, and was honorably discharged on July 30, 1960, after one year, eleven months and twenty-three days of active service. The special inquiry officer also held that this service was not sufficient under § 244(b) of the act, 8 U.S.C. § 1254(b), which provides that the requirement of continuous physical presence in the United States shall not be applicable to an alien who has served for a minimum period of 24 months in an active duty status in the armed forces of the United States and was separated from such service under honorable conditions. The Board of Immigration Appeals affirmed the holding of the special inquiry officer. A motion for reconsideration was made, asking the Board to reconsider the case in the light of the decision in Wadman v. Immigration and Naturalization Service, 329 F.2d 812 (9th Cir.), decided March 24, 1964, and not mentioned in the Board's decision which was rendered two months later. After a hearing upon reconsideration the Board of Immigration Appeals declined to alter their prior holding. The Board stated, however, "apart from finding the respondent ineligible on the ground that he lacks the required physical presence,

we would have no reason to rule the respondent either ineligible for relief or undeserving of relief."

Petitioner's application for review by this court was timely filed and this court has jurisdiction of said petition. 8 U.S.C. § 1105a(a).

In Wadman v. Immigration and Naturalization Service, supra, this court had occasion to consider the case of a petitioner who had spent five days below the border in Mexico. It was on the basis of this five-day absence from the United States that the Board of Immigration Appeals ruled that the petitioner there did not meet the requirement of being physically present in the United States for a continuous period of not less than seven years immediately preceding his application. The court stated:

> In Rosenberg v. Fleuti (1963) 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 the Supreme Court recently inquired into the circumstances under which absence from the country should affect an alien's deportability. There the alien had made a visit to Mexico of "about a couple of hours." It was held that his return to the United States did not per se constitute an "entry" as defined by § 101(a) (13) of the Act (for purposes of determining whether he could be deported on the ground of being excludable at entry); * * *.

The court, 374 U.S. at page 461, 83 S.Ct. at page 1811, 10 L.Ed.2d 1000, states:

> "In making such a casual trip the alien would seldom be aware that he

---

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an

alien lawfully admitted for permanent residence;

* * * * * * *

(b) The requirement of continuous physical presence in the United States specified in paragraphs (1) and (2) of subsection (a) of this section shall not be applicable to an alien who (A) has served for a minimum period of twenty-four months in an active-duty status in the Armed Forces of the United States and, if separated from such service, was separated under honorable conditions, and (B) at the time of his enlistment or induction was in the United States.

was possibly walking into a trap, for the insignificance of a brief trip to Mexico or Canada bears little rational relation to the punitive consequences of subsequent excludability."

\* \* \* \* \* \*

The Service seeks to distinguish Fleuti on the ground that there the court was dealing with an entry and that here we are faced with a concept of continuous physical presence. We do not regard this distinction as at all significant.

\* \* \* \* \* \*

Here there can be no question of the sufficiency of physical presence. The question is whether there was a sufficient continuity. In our judgment the term "continuous" is no more subject to a hard and fast construction than is the term "intended." The question is whether the interruption, viewed in balance with its consequences, can be said to have been a significant one under the guides laid down in Fleuti. (329 F.2d at 815–816)

In *Fleuti*, supra, the Supreme Court further stated, referring to the visit by Fleuti of "about a couple of hours" duration to Mexico:

We conclude, then, that it effectuates congressional purpose to construe the intent exception to § 101(a) (13) as meaning an intent to depart in a manner which can be regarded as meaning-

fully interruptive of the alien's permanent residence. (374 U.S. at 462, 83 S.Ct. at 1812)

Similarly, here, the petitioner's visit of about two hours to Mexico should not be regarded as meaningfully interruptive of his continuous presence in the United States for about ten years. We adhere to our holding in *Wadman* and hold that petitioner's brief visit to Mexico did not bar him from consideration for suspension of deportation as a matter of law. In deciding whether to permit an application for suspension of deportation when the issue is physical presence "in the United States for a continuous period of not less than seven years immediately preceding the date of such application," the Board must determine the significance of an absence from the United States during that time under the standard set down in *Fleuti*.[3]

In this case the respondent attempts to distinguish the holdings in *Fleuti* and in *Wadman* by pointing out that the original entry in *Fleuti* of the alien was a legal one, whereas in this case the petitioner's original entry was illegal. The respondent argues that the benefits of the construction given § 244(a), 8 U.S.C. § 1254(a), by *Wadman* should be applied only to aliens whose original entry into this country was legal and not to those who entered illegally. There is nothing in the statute or in *Wadman*[4]

3. In discussing whether an absence indicated "an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence" the Court in *Fleuti* stated:

One major factor relevant to whether such intent can be inferred is, of course, the length of time the alien is absent. Another is the purpose of the visit, for if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful. Still another is whether the alien has to procure any travel documents in order to make his trip, since the need to obtain such items might well cause the alien to consider more fully the

implications involved in his leaving the country. (374 U.S. at 462, 83 S.Ct. at 1812)

There is nothing in the record in the instant case from which the inference could be drawn that petitioner Git Foo Wong intended a meaningful interruption of his United States residence.

4. In *Wadman* the petitioner's original entry was illegal and was the basis for his deportation order under the Immigration and Nationality Act of 1952, § 241(a) (1), 8 U.S.C. § 1251(a) (1), as one excludable under the act, § 212(a) (9), 8 U.S.C. § 1182(a) (9) (a previous conviction of a crime involving moral turpitude). Petitioner Git Foo Wong was deportable under § 241(a) (1), 8 U.S.C. § 1251(a) (1), as one excludable under § 212(a) (20), 8 U.S.C. § 1182(a)

which supports such a distinction. In *Wadman* this court recognized that it would be consistent with the policies underlying this statute not to construe it in a manner which would restrict the ease with which applications for suspension of deportation could be made.

The apparent purpose of the grant of discretion to the Attorney General is to enable that officer to ameliorate hardship and injustice which otherwise would result from a strict and technical application of the law. A strict and technical construction of the language in which this grant of discretion is couched could frustrate its purpose. A liberal construction would not open the door to suspension of deportation in cases of doubtful merit. It would simply tend to increase the scope of the Attorney General's review and thus his power to act in amelioration of hardship. (329 F.2d at 817) [5]

The statute, since it refers only to an "alien", does not permit the respondent's construction, for it states that discretion may be exercised "in the case of an alien who applied to the Attorney General for suspension of deportation and * * * has been physically present in the United States for a continuous period of not less than seven years * * *."

In view of our opinion as stated above, it is not necessary for us to determine petitioner's second contention concerning

the sufficiency of petitioner's army service.[6]

The case is remanded to the Board of Immigration Appeals for action as may be proper in the light of this decision.

---

(20) (entry without valid immigrant visa). Although there may be differences between the two cases, respondent has not indicated what the differences may be; however, in light of our holding, we need not determine whether the facts in *Wadman* are on all fours with the facts in the instant case.

5. Although the quoted portion of the *Wadman* opinion was directed to a different portion of the statute having to do with good moral character, the reasoning is equally pertinent to the issues in the present case.

6. We feel, however, it is proper to point out that in this proceeding there has been brought to our attention an army regulation which reads as follows:

"ARMY REGULATIONS
No. 135–90
\* \* \* \* \* \* \*
4. Fulfillment of obligations.
\* \* \* \* \* \* \*
    d. *Two, three, or four years active duty—six year service obligations.* As used herein, an individual is considered as having completed 2, 3, or 4 years active duty if he has served on active duty for an *aggregate* period to within 90 days, of 2, 3, or 4 years, respectively.
\* \* \*"
    This regulation was not mentioned in the decision of the Board of Immigration Appeals, nor has there been any showing here as to whether it is applicable to or determinative of the particular type of petitioner's army service. We therefore do not base our decision on it.