MATTER OF VALENCIA-BARAJAS

In Deportation Proceedings

A–12986073

*Decided by Board August 22, 1969*

A lawful permanent resident alien who during a short trip to Mexico engaged in activities considered criminal by the Immigration and Nationality Act, namely, knowingly and for gain assisted, abetted and aided 2 citizens of Mexico to illegally enter the United States, did not make an innocent, casual and brief trip within the meaning of *Rosenberg* v. *Fleuti*, 374 U.S. 449, and, hence, upon his return made an entry within the purview of section 101(a)(13) of the Act upon which to predicate a ground of deportation.

CHARGE:

Order: Act of 1952—Section 241(a)(13) [8 U.S.C. 1251(a)(13)]—Prior to entry, knowingly and for gain, encouraged, induced, assisted, abetted or aided any other alien to enter or try to enter the United States in violation of the law.

The respondent, an unmarried male alien, 24 years of age, a native and citizen of Mexico, has been found deportable under section 241(a)(13) in that prior to his entry at San Ysidro, California on February 23, 1968, he knowingly and for gain, encouraged, induced, assisted, abetted or aided two Mexican aliens to enter the United States in violation of the immigration laws. He appeals from an order entered by the special inquiry officer on October 28, 1968 directing his deportation to Mexico on the charge stated in the order to show cause.

The respondent was admitted to the United States as an immigrant at the port of San Ysidro, California on June 28, 1962. He denies the allegations set forth in the order to show cause served upon him on June 24, 1968 that he was admitted to the United States as a returning resident alien on or about February 23, 1968; that prior to this entry, on or about February 20, 1968, he entered into an agreement in Tijuana, Mexico with two aliens.

369

citizens of Mexico, to assist them to illegally enter the United States for the payment of $100 from each of them upon their arrival in Los Angeles, California; that he knew that the aliens were not in possession of any document entitling them to enter the United States; that, on or about February 22, 1968, he did assist the two aliens to enter the United States by transporting them in his automobile from a location in Tijuana to a point near the international border; that the two aliens did enter the United States without inspection; and that, on or about February 23, 1968, he placed the aliens in the trunk of his automobile and then proceeded toward their interior destination.

The respondent testified that he was in Tijuana, Mexico on February 21 or 22, 1968 to visit his parents. He further testified that in the late afternoon of February 23, 1968 he was apprehended by the border patrol who found two aliens hidden in the trunk of his car, and that he had not hidden them and was unaware of their presence. The trial attorney in support of the charge presented a certified copy of the respondent's conviction in the United States District Court for the Southern District of California (Ex. 6), which establishes that on July 8, 1968, the respondent was convicted of the offense of violating Title 8, section 1324(a)(4) for inducing the illegal entry of aliens, and Title 8, section 1324(a)(2) for illegal transportation of aliens. The indictment contains four counts, charging the respondent with inducing the illegal entry and the illegal transportation of two aliens, to wit, Roberto Andrade and Donaciano Andrade. The respondent was convicted on all four counts and sentenced to imprisonment for two years. He served six months and was placed on probation for the remainder of his sentence.

The record contains the affidavits of the two smuggled aliens (Exs. 2, 2A and 4). They also testified during the hearing accorded the respondent on July 1, 1968 (pp. 5 and 11). They testified that they were approached by the respondent in Tijuana, Mexico on or about the 21st of February 1968; that the respondent promised to assist them to enter the United States in payment of $100 from each of them; that in furtherance of their agreement, he escorted them to the international border on the night of February 22, from which point they were guided into the United States by a third person, who secreted them in an empty house at a ranch; that, on the following day, the respondent brought them some food, and later that afternoon hid them in the trunk compartment of his car, where they were found by the border patrol while proceeding to the interior of the United States.

There is clear, unequivocal and convincing evidence that the respondent "knowingly and for gain" did assist, abet and aid two citizens of Mexico to enter the United States in violation of law. Section 241 (a) (13) provides, however, that the substantive offense of assisting an alien "knowingly and for gain" to enter the United States in violation of law must occur "prior to, or at the time of entry, or at any time within five years after entry." The Mexican aliens were smuggled into the United States on February 22, 1968, more than five years after the respondent's entry for permanent residence on June 28, 1962. This factor raises the issue as to whether the respondent, on the date of his last return to the United States on February 23, 1968, made an "entry" within the meaning of section 101 (a) (13), so as to become subject to deportation pursuant to section 241 (a) (13).

Section 101 (a) (13) of the Act (8 U.S.C. 1101 (a) (13)), provides that "an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary."

· The Supreme Court in the case of *Rosenberg* v. *Fleuti*, 374 U.S. 449, 10 L. Ed. 2d 1000 (1963), construed the intent exception of section 101 (a) (13), quoted above, "as meaning an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence" (id. at p. 462). The major factors set forth by the Court relative to a determination of whether such intent can be inferred were the length of time the alien is absent; the purpose of his visit; and whether he required travel documents to make the trip. The Court said that if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, then it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful. The Court held that an innocent, casual and brief excursion by a resident alien outside this country's borders may not have been "intended" as a departure disruptive of his resident alien's status and therefore may not subject him to the consequences of having made an "entry" into the United States on his return.

The respondent testified that he went to Mexico to see his parents on February 21 or 22, 1968 "because they live in Tijuana";

371

that he remained in Mexico "some ten or twelve hours"; that he has neither worked nor resided in Tijuana since he was admitted to the United States as an immigrant; and that he has been steadily employed in the United States since his entry for permanent residence (p. 27) Regardless of the respondent's testimony, we believe, in light of the record before us, that his depature on February 21 or February 22, 1968 and ensuing absence did not constitute the innocent, casual and brief trip described by the Supreme Court in *Fleuti* (*supra*). Clearly the evidence of record establishes that the respondent's activities during his absence from the United States (preceding his last return on February 23, 1968) involved conduct considered to be criminal by the Immigration and Nationality Act. He now stands convicted for violating 8 U.S.C. 1324(a)(2) and (4). This fact could support an inference that his purpose in departing from the United States was to accomplish an object which is contrary to a policy reflected in our immigration laws. In any event, we conclude that the respondent's departure can be regarded as "meaningfully interruptive" of his permanent residence. The Supreme Court's ruling in *Fleuti* (supra) is of no benefit to the respondent. Cf. *Matter of Caudillo-Villalobos*, 11 I. & N. Dec. 15 (BIA, 1965), aff'd 361 F.2d 329 (5 Cir., 1966); *Matter of Corral Fragoso*, 11 I. & N. Dec. 478 (BIA, 1966).

We find on the basis of the foregoing that the respondent last entered the United States on February 23, 1968 within the meaning of section 101(a)(13) of the Immigration and Nationality Act. The evidence establishes that the respondent, while in Tijuana, Mexico on February 21 and 22, 1968, arranged for the entry of and assisted two aliens to enter the United States in violation of the immigration laws; that subsequent to his return to the United States on February 23, 1968, he further participated in the smuggling operation by attempting to transport the two aliens to an interior destination and that the respondent has been convicted for a violation of the immigration laws. The respondent, prior to his entry on February 23, 1968, did "knowingly and for gain" assist two aliens to enter the United States in violation of law. Accordingly, we conclude that there is clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true, *Woodby* v. *INS*, 385 U.S. 276 (1966).

The respondent made no application for any form of discretionary relief. He does not appear to be eligible for voluntary departure because he is precluded from establishing good moral character under section 101(f)(3) as an alien who during the pe-

riod for which good moral character is required, is or was a person described in section 212(a)(31) of the Act (8 U.S.C. 1182(a)(31)). This section provides in substance that any alien who at any time shall have knowingly and for gain, encouraged, induced, assisted, abetted or aided any other alien to enter or try to enter the United States in violation of law shall be ineligible to receive a visa and shall be excluded from admission to the United States.

An appropriate order will be entered dismissing the appeal.

**ORDER:** It is directed that the appeal be and the same is hereby dismissed.