MATTER OF KUKLA

In Section 245 Proceedings

A-19457779

*Decided by Regional Commissioner May 2, 1974*

A temporary absence from the United States of an applicant for adjustment of status as a refugee during the two-year period of continuous physical presence required by the proviso to section 203(a)(7) of the Immigration and Nationality Act, as amended, is, without further inquiry, held to have interrupted the required continuity of his physical presence unless it is found that the interruption of physical presence can be considered insignificant when weighed against the consequences to the applicant of such a holding. Where, as in the instant case, applicant is eligible for adjustment of status as the beneficiary of an approved sixth preference visa petition, the consequences of holding that his absences interrupted the continuity of his physical presence are not serious. Therefore, his application for adjustment of status as a refugee under the proviso to section 203(a)(7) and section 245 of the Act is denied on the ground that he has not met the continuous physical presence requirement of the proviso to section 203(a)(7). However, he is granted adjustment of status under section 245 of the Act on the basis of his qualifications as a sixth preference immigrant.

IN BEHALF OF APPLICANT:   Charles Sternberg, Executive Director
International Rescue Committee, Inc.
386 Park Avenue South
New York, New York 10016

This matter is before the Regional Commissioner on certification by the District Director who denied the applications for classification as a refugee under the proviso to section 203(a)(7) and for adjustment of status under section 245 of the Immigration and Nationality Act, as amended.

The applicant is a 43-year-old married, native and citizen of Czechoslovakia. He was admitted to the United States February 6, 1971 as an exchange visitor, pursuant to section 101(a)(15)(J) of that Act, under the Soviet and Eastern European Exchange Program as a National Science Foundation Senior Foreign Scientist Fellow. He received extensions of stay under this program to November 30, 1973. The applicant's participation in the exchange visitor program was privately financed, and his exchange visitor's visa

was issued prior to May 25, 1972, the effective date of the Exchange-Visitor Skills List published by the Department of State on April 25, 1972 (Public Notice 356, 37 FR 8099). He is therefore not subject to the foreign residence requirement of section 212(e) of the Immigration and Nationality Act, as amended, and is not precluded by that section from applying for status as a permanent resident. The instant applications were filed February 6, 1973.

He stated that the award from the National Science Foundation gave him his first opportunity to leave Czechoslovakia with his family after his country had been occupied by the Soviet Union. He had been employed as a research scientist in the Geological Institute of the Czechoslovak Academy of Science, Prague, Czechoslovakia from 1966 until his departure for the United States in 1971. He further stated that he has never been a member of the Communist Party; that he always believed in the democratic traditions of Czechoslovakia as formulated by its first president, T. G. Masaryk; and that the Russian occupation of Czechoslovakia is obviously of a lasting nature and that free scientific inquiry is not possible there. He stated that after his arrival in the United States he cooperated with Radio Free Europe and that his full name was broadcasted in connection with this activity. He has also cooperated with a number of American governmental agencies, such as the Department of State, the Department of Transportation and the Commerce Department. He further stated that if he were required to depart the United States to return to Czechoslovakia, he would be persecuted as an enemy of a communist state.

We find that the applicant is a refugee from a Communist country within the meaning of section 203(a)(7) of the Act. The proviso to that section states "That immigrant visas ... may be made available in lieu of conditional entries ... to such aliens who have been *continuously physically present* in the United States for a period of at least two years prior to application for adjustment of status" (emphasis supplied).

The record discloses that the applicant, during the two years preceding the filing of his application for adjustment, was absent from the United States for four periods ranging from four to fourteen days, visiting Canada three time and Barbados once. The District Director denied the applications, holding that because of the absences noted above the applicant had failed to meet the continuous physical presence requirement specified in the proviso.

Counsel in his brief holds that these absences were not interruptive of the applicant's physical presence in the United States. The facts of the case are not in dispute. The sole question to be resolved is whether the absences did, in fact, break the continuous physical presence required by law. Counsel has been unable to

find, nor have we, any precedent decision either administrative or judicial dealing with this precise point. He cites *Matter of Riva*, 12 I. & N. Dec. 56, but this dealt with the question of the entry date upon which to base an adjustment of status of a Cuban refugee and does not deal with the question of physical presence. Counsel also states that absences in cases under section 249 of the Immigration and Nationality Act, as amended, and also in naturalization proceedings have been found to be not interruptive of the residence requirements but in both of these instances the question was one of residence rather than continuous physical presence.

The legislative history of section 203(a)(7) is silent as to any special interpretation of the terminology "continuously physically present". Counsel argues that if the intent had been to prohibit any departure from the United States, the law would have called for *uninterrupted physical presence* rather than *continuous* physical presence.

Section 244(a) of the Immigration and Nationality Act uses the terminology "physical presence in the United States for a continuous period", and section 244(b) refers to "The requirement of continuous physical presence ...".

In the absence at present of judicial precedent on the interpretation of the words "continuously physically present in the United States" as used in section 203(a)(7), it appears that reference to judicial decisions regarding the continuous physical presence requirements of section 244(a) of the Immigration and Nationality Act, as amended, may be helpful. In *Wadman v. Immigration and Naturalization Service*, 329 F.2d 812 (C.A. 9, 1964), the court considered the case of an alien who had been found ineligible by the Board of Immigration Appeals for suspension of deportation. The Board's decision was based upon the conclusion that, because of an absence of five days in Mexico, the alien had not met the statutory requirement of seven years' continuous physical presence in the United States immediately preceding his application.

The court, in finding *Wadman* eligible for suspension, invoked the precepts laid down by the Supreme Court in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963). The decision in the *Fleuti* case held that a short visit to Mexico, under the circumstances of that case, was not "meaningfully interruptive" of the alien's permanent residence and that, therefore, the alien had not made an entry upon his return to the United States from Mexico.

The Circuit Court of Appeals in *Wadman v. Immigration and Naturalization Service, supra*, indicated there was no significant distinction between the concept of a meaningful interruption of permanent residence in the *Fleuti* case, and the concept of a

meaningful interruption of continuous physical presence in the *Wadman* case. The Circuit Court of Appeals held that the term "continuous" was not subject to a hard and fast rule, and stated further:

> Here there can be no question of the sufficiency of physcial presence. The question is whether there was sufficient continuity .... The question is whether the interruption, viewed in balance with its consequences, can be said to have been a significant one under the guides laid down in *Fleuti.* (329 F.2d at 815-16)

A similar holding was made by the same Circuit Court of Appeals in its decision of March 16, 1966 in the case of *Git Foo Wong, also known as Chuck Sen Wong* v. *Immigration and Naturalization Service,* 358 F.2d 151. That case, too, involved a question of whether the alien's continuous physical presence for purposes of suspension of deportation had been broken by a short visit to Mexico.

The Board of Immigration Appeals, in *Matter of Wong,* 12 I. & N. Dec. 271 (1967), held that the decisions of the court in the cases of *Wong* v. *Immigration and Naturalization Service, supra,* and *Wadman* v. *Immigration and Naturalization Service, supra,* are binding in all jurisdictions on the issue of continuous physical presence as required by section 244(a) of the Act, as amended.

Accordingly, in the circumstances presently under discussion, it appears appropriate to examine the consequences of a determination that the alien's absences from the United States broke the continuity of his physical presence prior to the filing of his application on February 6, 1973. It would also appear pertinent to examine the guides laid down in *Fleuti.*

As to the consequences of holding that the continuity of physical presence was broken by the alien's brief absence, they are not very dire. the applicant is the beneficiary of a visa petition to accord him a sixth preference classification, filed on his behalf on September 13, 1973 by the Lamont-Doherty Geological Observatory of Columbia University seeking his services as a senior research associate. The visa petition was approved by the District Director on April 15, 1974. Since a sixth preference immigrant visa number is immediately available to the applicant by virtue of the approval of this visa petition, and since it appears the applicant is otherwise eligible, he may have his status adjusted under that preference even if he is found to be ineligible under the seventh preference. For this reason alone further consideration of whether the applicant may qualify under the latter preference, despite his absences, is not warranted.

However, assuming arguendo the consequences would indeed be serious if it were found that his absences did indeed interrupt the

continuity of his physical presence, we will explore the facts surrounding them. The Supreme Court, in *Fleuti*, stated that an absence which was "innocent, casual and brief" should not be regarded as "meaningfully interruptive" of a lawful permanent resident alien's residence. Also, stated the court, in determining whether the absence was innocent, casual and brief, "One major factor ... is, of course, the length of time the alien is absent. Another is the purpose of the visit, for if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful. Still another is whether the alien has to procure any travel documents in order to make his trip, since the need to obtain such items might cause the alien to consider more fully the implications involved in his leaving the country." The court indicated additional factors would be developed by the "gradual process of judicial inclusion and exclusion".

When we apply the foregoing guidelines to the question of whether the applicant's absences in the instant case broke the continuity of his physical presence, we find that while his absences (three to Canada and one to Barbados) may possibly meet the brevity guideline and there is no indication that the purpose of his visits abroad was in any way objectionable, his visit to Barbados cannot be regarded as casual. The visits to Canada required no special documentation, but information received from the Embassy of Barbados in Washington, D.C. establishes that a citizen of Czechoslovakia must have obtained a visa for entry into Barbados. Thus, the applicant does not meet one of the guidelines established by the Supreme Court concerning the obtaining of travel documents to accomplish a trip outside the United States. His absence, accordingly, must be regarded as interruptive of the required two-year period of continuous physical presence.

The decision of the District Director finding the alien ineligible for adjustment of status under the proviso to section 203(a)(7) will be affirmed. The application for adjustment will be approved on other grounds.

IT IS ORDERED that the order of the District Director denying the application for adjustment of status pursuant to the proviso to section 203(a)(7) and section 245 of the Immigration and Nationality Act, as amended, based upon the applicant's classification as a refugee be, and hereby is, affirmed.

*It is further ordered* that the application for adjustment of status be, and hereby is, approved on the basis of the applicant's qualifications as a sixth preference immigrant.