MATTER OF HERRERA

In Deportation Proceedings

A-22387924

*Decided by Board March 19, 1981*

(1) The physical presence requirement of section 244(a)(1) of the Immigration and National-
ity Act, 8 U.S.C. 1254(a)(1), has not been subject to hard and fast construction.

(2) Aliens with 7 years of presence in the United States have been found eligible for sus-
pension of deportation so long as no departure was "meaningfully interruptive" of
their stays here.

(3) In the Ninth Circuit, a departure from the United States meaningfully interrupts an
alien's "continuous physical presence" here for suspension purposes if it "reduced the
significance of the whole period as reflective of the hardship and unexpectednessof ex-
pulsion." '

(4) A strong policy against sham marriages is reflected in the Immigration and Nationality
Act, and in the case law interpreting that Act.

(5) Where alien departed the United States in furtherance of a scheme to obtain an
immigration benefit through a sham marriage, that departure was neither casual nor
innocent, but rather meaningfully interrupted his 7 years continuous physical pres-
ence here. He is thus statutorily ineligible for suspension of deportation.

CHARGE:
    Order: Act of 1952—Sec. 241(a)(2)[8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained
                    longer than permitted

ON BEHALF OF RESPONDENT:                ON BEHALF F SERVICE:
    Roger McCaffrey, Esquire                Thomas Y.K. Fong
    2110 E. 17th Street, Suite 123          Trial Attorney
    Santa Ana, California 92705

BY:  Milhollan, Chairman, Maniatis, Appleman, and Maguire, Board Members ·

In a decision dated October 24, 1979, an immigration judge found the
respondent deportable under section 241(a)(2) of the Immigration and
Nationality Act, 8 U.S.C. 1251(a)(2), as a nonimmigrant visitor who had
remained longer than authorized, denied his application for suspension
of deportation, and granted him the privilege of voluntary departure in
lieu of deportation. The respondent appealed. The appeal will be
dismissed.

The respondent is a 40-year-old native and citizen of Mexico. He last
entered the United States on December 14, 1976, as a nonimmigrant
visitor. Deportability has been conceded, and the only issue on appeal,

4

as at the hearing, is the respondent's eligibility for suspension of deportation under section 244(a)(1) of the Act, 8 U.S.C. 1254(a)(1).

In order to qualify for suspension of deportation, an alien who is deportable as an overstay must show that he has been physically present in the United States for a continuous period of at least 7 years, that he has been a person of good moral character for all that time, and that his deportation would result in extreme hardship to himself or to his spouse, parent or child who is a citizen or lawful permanent resident of the United States. Section 244(a)(1) of the Act. In the present case, the immigration judge found that the respondent had failed to meet both the 7 years continuous presence requirement and the extreme hardship requirement. He further stated that, even if the respondent had been statutorily eligible for suspension, he would have denied that relief as a matter of discretion.

The "physical presence" requirement of section 244(a)(1) has not been subject to a hard and fast construction. Instead, aliens with 7 years of presence in the United States have been found eligible for relief so long as no departure from this country was "meaningfully interruptive" of their stays here. *See Git Foo Wong v. INS*, 358 F.2d 151 (9 Cir. 1966); *Wadman v. INS*, 329 F.2d 812 (9 Cir. 1964); *Matter of Wong*, 12 I&N Dec. 271 (BIA 1967). *See also Rosenberg v. Fleuti*, 374 U.S. 449 (1963). In making the determination whether a given departure was "meaningful" we look to see whether the departure was "brief, casual and innocent:" if so, it will not interrupt the period of continuous physical presence required for suspension of deportation. *See Git Foo Wong, supra; Wadman, supra; Matter of Wong, supra.*

The United States Court of Appeals for the Ninth Circuit has further held that in reviewing the meaningfulness of a departure, this "Board must determine whether a particular absence during the 7-year period reduced the significance of the whole period as reflective of the hardship and unexpectedness of expulsion." *Kamheangpatiyooth v. INS*, 597 F.2d 1253, 1257 (9 Cir. 1979). "An absence cannot be significant or meaningfully interruptive of the whole period," the Court stated, "if indications are that the hardship of deportation to the alien would be equally severe had the absence not occurred, and that no significant increase in the likelihood of deportation could reasonably have been expected to flow from the manner and circumstances surrounding the absence." *See also Chan v. INS*, 610 F.2d 651 (9 Cir. 1979). As the present case arises in the Ninth Circuit, this legal standard will be applied here.

In this case, the Immigration and Naturalization Service concedes that the respondent has been physically present in this country, except for several brief absences, since 1966. The question, then, is whether any of these absences meaningfully interrupted his presence here. The departure with which the immigration judge was concerned, and with

5

which we will deal, occurred in 1976. At that time, the respondent went to the American consulate in Tijuana, Mexico, in order to obtain a visa. He sought a second preference immigrant visa as the spouse of a lawful permanent resident, based on his marriage to one Perla Pereira, a lawful permanent resident. This marriage, however, was undisputedly a sham, entered into solely for immigration purposes. A proxy marriage to Perla had occurred in Guatemala on October 28, 1973. The respondent was not present at the marriage, and in fact has never been to Guatemala. The respondent has freely admitted that the marriage was arranged in order that he might obtain an immigration benefit, and that he never lived with Perla, and never intended to enter into a bona fide marital relationship with her. At the time of this marriage, the respondent was living with his ex-wife (whom he had divorced in 1973), the woman with whom he still lives. He paid Perla a total of $2500 to enter into the marriage and help him arrange for immigration papers. Based on these facts, the immigration judge determined that the respondent's 1976 departure to obtain a visa based on a sham marriage was neither casual nor innocent, and that the departure thus meaningfully interrupted the respondent's 7 years of continuous presence here.

The respondent argues that the immigration judge's finding in this regard was erroneous because he (the respondent) did not know for certain that his marriage to Perla was not valid under the immigration laws. He contends that his departure in 1976 to obtain a visa was in fact "innocent" because he was not sure the marriage would not be considered valid, and he had no intention of violating the immigration laws. He further contends that the departure was casual, in that it was "occasional," and that is the second definition for "casual" given in *Webster's New World Dictionary*, 2nd College Edition, 1977.

We do not agree with the respondent that his 1976 departure from the United States was either casual or innocent. The Supreme Court in *Rosenberg* v. *Fleuti, supra*, stated that in determining whether an alien's departure from that country should be regarded as "meaningful," a relevant factor to consider is the purpose of the visit abroad, for,

> if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful. *Id.* at 462.

A number of cases have interpreted this portion of the *Fleuti* decision, and have held the *Fleuti* doctrine inapplicable where the aliens while abroad commit acts contrary to the policies of the immigration laws. *See, e.g., Laredo-Miranda* v. *INS*, 555 F.2d 1242 (5 Cir. 1977) (aiding illegal aliens to enter the United States surreptitiously); *Longoria-Castenada* v. *INS*, 548 F.2d 233 (8 Cir. 1977) (smuggling aliens); *Cuevas-Cuevas* v. *INS*, 523 F.2d 883 (9 Cir. 1975) (smuggling aliens); *Palatian* v. *INS*, 502 F.2d 1091 (9 Cir. 1974) (attempting to bring in 55 pounds of

marijuana); *Matter of Valencia-Barajas*, 13 I&N Dec. 369 (BIA 1969) (smuggling aliens); *Matter of Alvarez-Verduzco*, 11 I&N Dec. 625 (BIA 1966) (attempting to bring in heroin).

*Kamheangpatiyooth* v. *INS*, *supra*, also recognized the importance of considering an alien's purpose in leaving the United States, in making the determination of whether such departure was meaningful. In that case, the alien's purpose was wholly innocent (visiting his sick mother), and the only question was whether the length of the trip abroad, and the planning required for it, rendered it meaningfully interruptive of his presence here. However, after setting forth its new test for deciding the meaningfulness of a departure, the Court in a footnote noted that,

> The alien's purpose may have a significance independent of its relevance in determining whether an absence has significantly affected the reasonableness of an inference that expulsion would be harsh and unexpected. In *Fleuti* the Court indicated that readmission following a journey abroad may constitute an "entry" within the meaning of 101(a)(13) if the trip is undertaken "to accomplish some object which is itself contrary to some policy reflected in our immigration laws." *Id.* at 1257-1258.

While the cases finding the *Fleuti* doctrine inapplicable due to an alien's purpose in taking a trip abroad, or due to his actions while abroad, have generally involved the smuggling of aliens or of drugs, and not aliens involved in sham marriages, there is no question that a strong policy against sham marriages is also reflected in the Immigration and Nationality Act, and in the case law interpreting the Act. *See, e.g.,* section 204(c) of the Act, 8 U.S.C. 1154(c); section 241(c)(1) and (2), 8 U.S.C. 1251(c)(1) and (2); *Lutwak* v. *United States*, 344 U.S. 604 (1953); *Matter of M-*, 8 I&N Dec. 217 (BIA 1958). We therefore hold that the doctrine set forth in *Fleuti* and *Git Foo Wong*, *supra*, will not apply where an alien departs the United States, no matter how briefly, in furtherance of a scheme to obtain immigration benefits through a sham marriage.

The respondent in the present case admittedly entered into a fraudulent marriage. Despite his protests of complete innocence, the respondent's testimony regarding this marriage clearly indicates that he recognized the possibility of problems with his marriage to Perla Pereira.[1] When he departed for Mexico in 1976, it was for the purpose of obtaining an immigrant visa based on a marriage which he knew was not bona fide, and which he at least suspected might not be valid for immigration

---

[1] *See, e.g.,* these exchanges, at the deportation hearing, between the respondent and his attorney:

Q. And did you know whether or not, did you think it [the marriage to Perla] was illegal under Mexican law?
A. I did not know.
Q. So you did not know one way or another whether it was illegal or legal?
A. No.

purposes. Under these circumstances, the conclusion is inescapable that this departure from the United States was neither casual nor innocent. It was thus meaningfully interruptive of his 7 years' presence here, and renders him statutorily ineligible for suspension of deportation.

Having determined that the respondent has not met the 7 years continuous physical presence requirement, we need not reach the issue of whether he would suffer extreme hardship if deported, or whether he would merit suspension of deportation as a matter of discretion.

The time originally granted to the respondent for voluntary departure has long since expired. In accordance with *Matter of Chouliaris*, 16 I&N Dec. 168 (BIA 1977), we will grant the respondent 30 days from the date of this order in which to voluntarily depart from the United States.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** The respondent shall be permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director. In the event of failure to so depart, the respondent shall be deported as provided in the immigration judge's order.

---

Q. And as far United States law goes? Did you know whether it was legal or illegal?
A. Yeh, no.
Q. So did you actually believe thou [sic] after all the paper work went through that you were legally married even though you did not live with the wife?
A. I do not know; it is what I said before, I do not know what I was yes or no . . . .
Q. Did you ever feel that your marriage to Perla Pereira was illegal? Just to get an answer which can be easily understood.
A. Yes and no because she use to say that it was legal but I never signed any papers. (Tr. at 37-38)