MATTER OF RIVA

In Adjustment of Status Proceedings

A-12574985

*Decided by Regional Commissioner February 8, 1967*

A subsequent arrival after a temporary absence from the United States with no intention on the part of the applicant to abandon her residence in the United States does not constitute the applicant's "last arrival" within the contemplation of section 1 of the Act of November 2, 1966; hence, a Cuban citizen's "last arrival", for the purposes of section 1, *supra*, occurred on September 15, 1959, where such Cuban citizen last arrived in the United States on May 9, 1966 after a temporary absence abroad in connection with her occupation, having previously been inspected and admitted on September 15, 1959, and, her application for adjustment of status having been filed on November 23, 1966, she is entitled to the creation of a record of lawful admission for permanent residence as of May 23, 1964.

The District Director granted this application providing for the creation of a record of lawful admission for permanent residence of the applicant as of May 9, 1966, the date of her last arrival into the United States, when she was admitted as a nonimmigrant in possession of an official G-4 visa at New Orleans, Louisiana, after a temporary absence from the United States in connection with the requirements of her position as a staff member of the Inter-American Development Bank. The Department of State issued this nonimmigrant visa to her in Washington, D.C. pursuant to the provisions of section 101(a)(15)(G)(iv) of the Immigration and Nationality Act. The District Director certified the case to this office for review. Applicant has waived the filing of a brief or other written statement.

She is a native of Mexico and a citizen of Cuba. She was born April 19, 1927. At the time of her birth, her mother was a citizen of Cuba and her father was a citizen of Mexico. She married her spouse in Havana, Cuba on July 25, 1949. He is a native and citizen of Cuba, born July 29, 1917. They have two children born in that country on September 24, 1953 and September 18, 1958, and one child born in the United States.

There is in evidence a certificate of citizenship issued by the Under Secretary of State of the Republic of Cuba, dated December 13, 1949,

setting forth that applicant is a citizen of Cuba. This certificate was apparently issued in accordance with prior Constitutions of Cuba (before the takeover by that country's present regime) which provided that every person born in a foreign territory to a Cuban father or mother became a citizen of Cuba as of the date of his birth upon taking up residence in Cuba.

The record discloses that applicant first arrived in the United States subsequent to January 1, 1959 on September 15, 1959 as a nonimmigrant for pleasure and was so admitted pursuant to section 101 (a) (15) (B) of the Act. On June 12, 1961, following receipt of notice from the Department of State that she was entitled thereto, her status was changed to that of a nonimmigrant as an employee of an international organization under section 101 (a) (15) (G) (iv).

On November 2, 1966 Public Law 89-732 was enacted. It is an Act to adjust the status of Cuban refugees to that of lawful permanent residents of the United States, and for other purposes. Section 1 of this Act reads as follows:

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That, notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrrival into the United States, whichever date is later. The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States.

Section 2 of this same Act reads as follows:

In the case of any alien described in section 1 of this Act who, prior to the effective date thereof, has been lawfully admitted into the United States for permanent residence, the Attorney General shall, upon application, record his admission for permanent residence as of the date the alien originally arrived in the United States as a nonimmigrant or as a parolee, or a date thirty months prior to the date of enactment of this Act, whichever date is later.

A literal reading of section 1 of the Act of November 2, 1966 would make it appear that the record of lawful admission for permanent residence in the case of an applicant who had arrived in the United States subsequent to January 1, 1959 but had been absent recently for a short

57

period would have to be created as of the date of his recent return. However, since this is remedial legislation, such a strict interpretation is to be avoided if it thwarts the congressional intent. The legislative history of the Act of November 2, 1966 shows that that Act emerged as a compromise measure between S. 3712 and H.R. 15183. The former bill had provided that upon approval of the application by a Cuban refugee for adjustment of status, the record of admission for permanent residence was to be created as of the date of his last arrival in the United States. The latter bill had provided that upon approval of such application, the record of lawful admission for permanent residence was to be created as of the date of approval of the application. The Senate and House conferees agreed on the compromise which appears in the Act of November 2, 1966 and which provides that the record shall be created "as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later."

In commenting upon the conference report, Congressman Jacob H. Gilbert, one of the managers on the part of the House stated (Congressional Record—House, October 21, 1966, p. 27452) :

The great majority of refugees from Cuba have been in the United States for many years and the conferees thought it would only be equitable to give them some retroactive status as permanent residents but not going so far as to make them automatically eligible to apply for naturalization.

It was, therefore, the obvious congressional intent to provide Cuban aliens who had been inspected and admitted or paroled into the United States after January 1, 1959 and who had resided for some time within the United States, with a partial assist toward meeting the residence requirement for naturalization.

There are a considerable number of Cuban aliens who, after their initial admission or parole into the United States after January 1, 1959, have found it necessary to proceed abroad temporarily for business, emergent family situations or other substantial reasons. Thereafter, they have proceeded abroad, often with the prior consent of the Service, which has issued to them advance authorization for parole upon their return. It is inconceivable that Congress had intended to deprive such aliens of the "head start" towards fulfilling the residence requirement for naturalization, which the legislation bestows upon other Cuban refugees who had not found it necessary to depart temporarily from this country.

In that connection, it should be noted that, in commenting upon S. 3712 as it was originally introduced, the Deputy Attorney General, in a letter dated August 16, 1966 to the Chairman of the Senate Committee on the Judiciary made the following comment:

58

It has been pointed out that a number of Cuban parolees have made the effort to depart from the United States for the sole purpose of procuring immigration visas and have returned as immigrants for permanent residence. Under the present law the date of the second arrival would be the applicable date in computing residence time toward naturalization. It is questionable whether these Cubans who have made the effort to adjust their status and probably through personal sacrifice have expended funds to go out of the country and return as permanent residents should be penalized and have a later arrival date than if they had stayed in the country as most Cuban parolees have done and who under this Bill would have their status adjusted as of the date of original arrival.

It was apparently as a result of the Deputy Attorney General's comment quoted above that section 2 of the Act of November 2, 1966 was enacted in its present form. That section provides that a Cuban refugee who was lawfully admitted to the United States for permanent residence prior to November 2, 1966 may apply to have his admission for permanent residence recorded as of the date he "originally arrived in the United States as a nonimmigrant or as a parolee, or a date thirty months prior to" November 2, 1966, whichever is the later.

Yet, although section 2 refers to the original arrival, and section 1 refers to the last arrival, it appears clear from the legislative history that it was intended to confer substantially the same retroactive benefit to eligible applicants under section 1 or 2 of the Act of November 2, 1966, with respect to fixing the date as of which the record of lawful admission for permanent residence was to be created.

Therefore, we conclude that the term "last arrival" as used in section 1 of the Act of November 2, 1966, and the term "originally arrived" as used in section 2 of that Act, must be interpreted with reference to other possible arrivals in the United States by the alien. In section 1, the term "last arrival" refers to the alien's first arrival after January 1, 1959 (at which time he was inspected and admitted or paroled into the United States), as opposed to any arrivals by the alien on or prior to January 1, 1959. The term "originally arrived" as used in section 2 refers to the alien's first arrival after January 1, 1959 (at which time he was inspected and admitted or paroled into the United States), as opposed to the date on which the alien subsequently arrived in the United States in possession of an immigrant visa. Thus, it is submitted that the term "last arrival" as used in section 1 and the term "originally arrived" as used in section 2 both refer to the same arrival in point of time, namely the alien's first arrival after January 1, 1959 on which occasion he was inspected and admitted or paroled into the United States.

It is our further view that a subsequent arrival should be considered in computing the date as of which the record of lawful admission should be created in the case of an applicant under section 1 of the

59

Act of November 2, 1966, only when the alien's subsequent arrival occurred after he had departed from the United States with the intention of abandoning his residence in this country. On the other hand, a subsequent arrival after a temporary absence from the United States with no intention on the applicant's part to abandon his residence in the United States should not be regarded as the applicant's "last arrival" within the contemplation of section 1 of the Act of November 2, 1966.

The foregoing conclusion is based upon the legislative history of Public Law 89–732, from which it appears that Congress did not intend that an eligible applicant who had acquired a substantial period of residence within the United States should be deprived of the retroactive benefit in ajudicating his status simply because such applicant had found it necessary to depart temporarily from this country with no intention of abandoning his residence in the United States.

The applicant filed her application for creation of a record of admission for permanent residence with the Service on November 23, 1966 under section 1 of Public Law 89–732. The record establishes she is a citizen of Cuba; that she has been physically present in the United States for at least two years subsequent to January 1, 1959; that she is eligible to receive an immigrant visa; that she is admissible to the United States; and that she has executed and submitted the written waiver of certain rights, privileges, exemptions and immunities which would otherwise accrue to her by reason of her occupational status as a member of an international organization, as required by 8 CFR 245.1(c).

Based upon the reasons set forth above, we find that applicant's last arrival in the United States, for the purpose of this application, occurred on September 15, 1959. We further find, pursuant to section 1, that applicant is entitled to a creation of a record of lawful admission for permanent residence as of a date thirty months prior to November 23, 1966, specifically May 23, 1964. Accordingly, we shall enter the following order:

ORDER: It is ordered that the application be granted and a record created showing applicant's admission into the United States for permanent residence as of May 23, 1964.