MATTER OF CAUDILLO-VILLALOBOS

In Deportation Proceedings

A-8469070

*Decided by Board January 15, 1965*

A lawful permanent resident alien, who, following arrest and conviction of a crime involving moral turpitude in Mexico, thereafter on numerous occasions departed to Mexico on short visits to appear before the clerk of court in that country to report and to sign the bond book, made upon his returns from Mexico following such departures entries into the United States within the meaning of section 101(a)(13), Immigration and Nationality Act, upon which to predicate a ground of deportation [*Rosenberg* v. *Fleuti*, 374 U.S. 449, inapplicable.]*

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Convicted of crime involving moral turpitude, incest.

The case comes forward on appeal by the trial attorney from the decision of the special inquiry officer dated September 14, 1964, ordering that the proceedings be terminated.

The respondent, a native and citizen of Mexico, 42 years old, male, married, last entered the United States on or about January 31, 1963 and was admitted as a returning resident alien upon presentation of his Form I-151, Alien Registration Receipt Card. He was returning after a brief visit with the family that had been involved in a criminal matter which will be discussed below. The respondent had been admitted for lawful residence as a nonquota immigrant on April 10, 1953 and he testified that he had been entering the United States illegally for some four years prior to his legal admission. Since his lawful admission on April 10, 1953, the respondent had made numerous short visits to Mexico, returning each time upon presentation of his Form I-151. However, he testified that he was arrested in the month of July 1960 at Jaurez, Mexico, charged with the crime of incest and was kept in jail for two months. He was then released on

*Affirmed: *Caudillo-Villalobos* v. *Immigration and Naturalization Service*, 361 F.2d 329 (C.A. 5, 1966).

bond around September 26, 1960 and thereafter reported weekly to the office of the clerk of the Second Penal Court, Jaurez, Mexico to sign the bond book and appeared weekly for a period of two or three months, thereafter receiving permission to appear not less than once per month. The respondent continued to report to the clerk's office in Jaurez to sign the bond book until either November 1961 or January 1962.

On September 27, 1961 in the Second Penal Court, Jaurez, Chihuahua, Mexico the respondent was convicted of the crime of incest and was sentenced to a term of imprisonment of two years and six months. On November 22, 1961 the First Penal Branch of the Supreme Tribunal of Justice of the State of Chihuahua, Mexico dismissed his appeal from this conviction. A further appeal in the nature of an application for an "amparo" was made by his lawyer to a higher court in Mexico and he testified that the application for the "amparo" was dismissed on August 24, 1962, a fact which he first learned from an immigration investigator on February 1, 1963 when the investigator required him to surrender his Form I-151. The respondent testified that since surrendering this document he has been unable to go to Mexico to consult with his attorney about any further action in the criminal case relating to the conviction for incest and has not communicated with his attorney in Jaurez, despite the fact that he knows the attorney's address, and does not know the present status of the case. He has testified that except for the two months' imprisonment after his arrest, he has not subsequently served any imprisonment as a result of his sentence for conviction of incest.

In his original order dated June 26, 1963, the special inquiry officer found the respondent deportable on the charge contained in the order to show cause. The respondent applied for a waiver *nunc pro tunc* under section 212(g) of the Immigration and Nationality Act of his excludability under section 212(a)(9) of the Act, based upon the claim that his exclusion would result in extreme hardship to his citizen wife and citizen daughter whom, he testified, resided with him and were dependent upon him for support. At the hearing the respondent alleged that his wife and daughter were living with him at 1000 East San Antonio Street, Apartment 16, El Paso, Texas. A report of investigation with reference to discretionary relief under section 212(g) was received into evidence pursuant to stipulation, and counsel for the respondent has declined to make application for reopening to present evidence that would overcome the adverse matter contained therein (Ex. 7). The report of investigation shows

16

that the respondent has not lived with his wife for the past 14
months; that she had instituted divorce proceedings in El Paso early
in 1957 but did not complete these proceedings because of lack of
funds; that she and the respondent were reconciled in 1960 and lived
together until March 1962 when they separated. She stated that the
source of their difficulties was that the respondent had a woman and
daughters in Jaurez, Mexico and spent all of his money on them.
Apparently this Mexican family was involved in the incest case. The
respondent's wife stated that he visited her frequently and gave her a
little money but does not contribute materially to her support; that
she has worked continuously since 1957 and is employed at a restau-
rant in El Paso, earning $30.00 a week plus tips; that she supports
herself and their daughter as well as her divorced daughter's baby.
The respondent's wife stated that under the present situation it
would not constitute an economic detriment to her if the respondent
were deported. In the exercise of discretion the special inquiry officer
on the basis of this evidence denied discretionary relief for a *nunc
pro tunc* waiver under section 212(g) or for voluntary departure.

On June 27, 1963, the special inquiry officer ordered that his prior
order and decision entered June 26, 1963, be withdrawn and that the
hearing be reopened for further consideration in the light of the
holding in *Rosenberg* v. *Fleuti*, 374 U.S. 449 (June 17, 1963). On
September 14, 1964, the special inquiry officer found that, notwith-
standing the respondent's conviction for incest which became final
on November 22, 1961, he did not make an "entry" on the occasions
that he returned to the United States thereafter following brief
visits to Juarez, Mexico at weekly intervals which were for the
purpose of signing the bond book in the office of the clerk of the
court in Juarez and also for the purpose of pleasure and to visit
relatives in that city; that consequently he fell within the purview
of *Rosenberg* v. *Fleuti*, *supra*, and ordered that the proceedings be
terminated.

The case of *Rosenberg* v. *Fleuti*, 374 U.S. 449, 10 L.ed. 2d 1000,
concerned an alien who was originally admitted to the United States
for permanent residence in 1952 and had resided here continuously
except for a brief visit of about a couple of hours in Mexico in 1956
and was ordered to be deported on the ground that at the time of
his 1956 return he was excludable under section 212(a)(4) of the
Immigration and Nationality Act of 1952 as an alien "afflicted with
psychopathic personality." The Supreme Court felt it was unneces-
sary to reach the constitutional question raised by the term "af-
flicted with psychopathic personality," since under section 101(a)-
(13) of the Act an innocent, casual and brief excursion by a resident

alien outside the borders of the United States may not have been "intended" as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an "entry" into the United States on his return. In its decision the Court traced the earlier cases which had developed a judicial definition of entry which had harsh consequences for the alien, the impact of which was lessened by the cases of *Di Pasquale* v. *Karnuth* and *Del Guercio* v. *Delgadillo*.[1] The Court pointed out that the holding of these cases was considered by Congress by defining the term "entry" in section 101(a)(13) of the Immigration and Nationality Act of 1952, 8 U.S.C. 1101(a)(13) to mean any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided*, That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

The Court stated if a foreign trip was innocent, casual and brief, it is consistent with those discernible signs of Congressional purpose to hold that the "departure was not intended" within the meaning of the ameliorative intent of the exception to section 101(a)(13) of the Act and concluded that it effectuates Congressional purpose to construe the intent exception to section 101(a)(13) as meaning an intent to depart in the manner which can be regarded as meaningfully interruptive of the alien's permanent residence. The Court further stated that the major factors relevant to whether such intent can be inferred, is the length of time the alien is absent; another,

---

[1] *Di Pasquale* v. *Karnuth*, 158 F.2d 878, involved an alien who took an overnight sleeper from Buffalo to Detroit which was routed through Canada and the Court held that it could be too harsh to impute the carrier's intent to the alien, there being no showing that the alien knew he would be entering Canada; *Delgadillo* v. *Carmichael*, 332 U.S. 388 involved an alien who upon rescue after his intercostal merchant ship was torpedoed during World War II had been taken to Cuba to recuperate before returning to this country and the Court held that the exigencies of war and not his voluntary act put the alien on foreign soil and the Court refused to attribute to Congress a purpose to make the alien's right to remain here dependent on circumstances so fortuitous and capricious.

the purpose of the visit, for if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful; and that still another was whether the alien had to procure any travel documents to make his trip since the need to obtain such documents might cause the alien to consider more fully the implications involved in his leaving the country. The Court, observing that the operation of these possibly relevant factors remains to be developed by the gradual process of judicial inclusion and exclusion held that an innocent, casual and brief excursion by a resident alien outside this country's borders may not have been "intended" as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an "entry" into the country on his return.

In the instant case the respondent was admitted for permanent residence on April 10, 1953. On one of his numerous trips into Mexico he was arrested in July 1960, charged with the crime of incest and was kept in jail for two months. It may be noted that the type and length of this absence is not the innocent, casual and brief absence that was present in the *Fleuti* case. On September 27, 1961, he was convicted, his appeal from this conviction was dismissed on November 22, 1961 and his application for an "amparo" was dismissed on August 24, 1962. The exact nature and effect of an "amparo," are not set forth by the special inquiry officer. However, upon the facts, it appears that there exists a final conviction on September 27, 1961 for the crime of incest. Thereafter, on numerous occasions the respondent was required by the court in Mexico to appear before the clerk of the court to report and to sign the bond book. All these absences of the respondent were as a result of the legal criminal proceeding arising out of the commission and conviction of the crime of incest.

The definition of the term "entry" contained in section 101(a)(13) of the Immigration and Nationality Act of 1952 provides that the "intent" exception shall not be applicable to a person whose departure from the United States was occasioned by deportation proceedings, extradition or other legal process. The departures of this respondent, whose departures from the United States were occasioned by legal criminal proceedings, appear to fall squarely within the scope of this proviso. We conclude that the facts and circumstances of this case vary so much from the facts and circumstances

19

in the *Fleuti* case as to render the holding in that case inapplicable.[2] It is found that the respondent since his conviction on September 27, 1961, for the offense of incest, a crime involving moral turpitude, has been absent on numerous occasions to Mexico and that his returns from Mexico constituted entries into the United States. At the time of his entries into the United States subsequent to his conviction the respondent was excludable under the immigration laws. The charge in the order to show cause is sustained.

The respondent has made application for a *nunc pro tunc* waiver under section 212(g) of the Immigration and Nationality Act based upon his citizen wife and child or in lieu thereof for voluntary departure. For the reasons set forth by the special inquiry officer in his order of June 26, 1963, to wit, the failure to establish that his deportation would result in extreme hardship to his citizen wife and daughter and in view of the fraud and deceit revealed in the testimony of the respondent and his wife as shown by an investigator's report which showed that they had been separated for the past 14 months instead of living together as represented, together with the fact that he has been convicted of a crime involving moral turpitude within the past five years, discretionary relief will be denied.

**ORDER:** It is ordered that the appeal of the trial attorney from the order of the special inquiry officer dated September 14, 1964, be sustained.

*It is further ordered* that the application for a waiver *nunc pro tunc* under section 212(g) of the ground of excludability of the respondent at the time of his entry on January 31, 1963, as an alien who had been convicted of a crime involving moral turpitude to wit, incest, be denied.

*It is further ordered* that the application for voluntary departure be denied.

*It is further ordered* that the respondent be deported from the United States to Mexico on the charge contained in the order to show cause.

---

[2] Compare *Matter of Abi-Rachid*, Int. Dec. No. 1344; *Matter of Guimares*, Int. Dec. No. 1339; *Matter of Scherbank*, Int. Dec. No. 1337.