MATTER OF WOOD

In Exclusion Proceedings

A-14577147

*Decided by Board March 27, 1967*

(1) Conviction of applicant under section 33 of the Canadian Juvenile Delinquents Act of 1929 of contributing to a 16-year-old female, becoming a juvenile delinquent by having sexual intercourse with such female, for which offense imposition of sentence was suspended, he was placed on probation for 2 years and required to pay $150 toward costs, is conviction of a petty offense within the purview of section 212(a)(9), Immigration and Nationality Act, as amended.

(2) Applicant, who, following lawful admission for permanent residence, departed on December 5, 1965 to Canada to appear in court where he was charged with conspiracy to utter and conspiracy to commit forgery and was released, after which he returned to this country in a day or two, again returning on December 13, 1965 to Canada where on December 15 he was convicted of both offenses, fined, placed on probation and released, returning to the United States 3 or 4 days later, his return following each such departure constituted an "entry" within the meaning of the immigration laws and at the time of the latter entry (on or about December 18, 1965) he was excludable under section 212(a)(9) of the Act.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant not in possession of immigrant visa or other valid entry document.

Act of 1952—Section 212(a)(9) [8 U.S.C. 1182(a)(9)]—Convicted of crimes involving moral turpitude, to wit: contributing to juvenile delinquency (Canada); conspiracy to commit forgery and uttering (Canada).

ON BEHALF OF APPLICANT:
Harry Kobel, Esquire
Rosin & Kobel
2156 Kenobscot Building
Detroit, Michigan 48226

ON BEHALF OF SERVICE:
Robert A. Vielhaber
Appellate Trial Attorney
(Memorandum submitted)

This case comes forward on certification from the special inquiry officer, who found the applicant excludable on both grounds set forth above and ordered his exclusion and deportation from the United States.

Applicant is a 26-year-old single male alien, a native and citizen of Canada, who was admitted to the United States for permanent residence on June 14, 1965, at Noyes, Minnesota, in possession of a nonquota immigrant visa. He last sought admission to the United States at Detroit, Michigan on September 11, 1966, as a returning resident alien, upon presentation of his Form I-151 (Alien Registration Receipt Card), and was held for a hearing as one who did not appear to be clearly entitled to enter.

On February 5, 1963, applicant pleaded guilty, in the Winnipeg Juvenile Court and Family Court, in Canada, to having contributed to the "becoming a juvenile delinquent" of a named child, in violation of section 33 of the Canadian Juvenile Delinquents Act of 1929, in that he had had sexual intercourse with the said child [1], whose age is shown by the record to have been 16 years. Imposition of sentence was suspended for two years; applicant was released on his own recognizance under $2000 bond, he was required to pay $150 toward the costs of prosecution, and was to be on probation for two years. His probation and all of the attendant conditions were terminated on August 24, 1964. This conviction, and the details of the proceeding, were made available by applicant to the American Consul when he applied for an immigrant visa in 1964. On the basis of this information, the consular officer reached the decision that there had been a single conviction of a petty offense, so that the applicant was not ineligible for a visa under section 212(a)(9). The immigrant visa was issued in 1965.

It is the special inquiry officer's holding that the conviction was not for a petty offense; that applicant was rendered excludable by it and, therefore, should not have been issued the visa; that his entry with the visa was not a lawful one, nor was he entitled to the Form I-151 issued thereafter on the basis of that entry; and that in consequence he is now excludable as one who does not have an immigrant visa or other valid entry document.

In determining anew the question of whether the conviction was for a petty offense, the special inquiry officer looked to Title 22 of the District of Columbia Code to see whether it contained the same or an equivalent offense (cf. *Matter of T—*, 6 I. & N. Dec. 508, for proper procedure to determine whether a crime committed abroad is to be considered a misdemeanor classifiable as a petty offense). There is no exact counterpart in the District of Columbia Code, but it was the special inquiry officer's opinion that section 22-3501 referred to "such

---

[1] We have heretofore held, in *Matter of W—*, 5 I. & N. Dec. 239, that violation of this section of the Canadian law, where the specific act is sexual intercourse, is a crime involving moral turpitude.

an offense". We do not believe this is a correct determination. That section, providing a penalty of imprisonment for up to ten years, and entitled "Indecent Acts—Children", relates to indecent liberties with a child of either sex, *under the age of sixteen years*, and is not intended to cover sexual intercourse with a female, either under or over 16 years of age, *Thompson* v. *United States*, 228 F.2d 463, 1956, 97 U.S. App. D.C. 116; *Whittaker* v. *United States*, 281 F.2d 631, 1960, 108 U.S. App. D.C. 268. The Government, by memorandum, urges that the correct section of the District of Columbia Code is 22-2801, which deals with rape, both statutory and forcible. Statutory rape, as defined therein, relates to a female child *under sixteen years of age*. The Government urges, however:

> The fact that the age in the District of Columbia may be lower than the corresponding offense in Canada does not mean that consent is present. The essence of the offense here is lack of consent and whether the lack of consent is actual or statutory is not material. * * *" (Memorandum, p. 3.)

The age of consent, as far as statutory rape is concerned, is the same in Canada as in the District of Columbia (cf. section 138, *Tremeear's Annotated Criminal Code—Canada*, 6th Edition), and under the facts in this case, applicant could not have been successfully prosecuted for statutory rape in Canada. Nor can we agree that the essence of the offense is lack of consent. The section under which applicant was convicted punishes the knowing or willful doing of:

> * * * any act producing, promoting, or contributing to a child's being or becoming a juvenile delinquent or likely to make any child a juvenile delinquent . . . (section 33.(1) (b), Juvenile Delinquents Act of 1929).

A "juvenile delinquent," as defined by that Act, is:

> * * * any child who violates any provision of the criminal code of any Dominion or Provincial statute or of any bylaw or ordinance of municipality, *or who is guilty of sexual immorality* or any similar form of vice, or who is liable by reason of any other act to be committed to an industrial school or juvenile reformatory under the provisions of any Dominion or Provincial statute * * *. (emphasis supplied) (section 2(g), Juvenile Delinquents Act of 1929).

Thus, it is apparent that the core of the offense is that applicant, by having relations with a female not his wife, who is still within the age group considered as a juvenile, has contributed to her becoming a juvenile delinquent by making her guilty of sexual immorality. We believe that the offense in the District of Columbia Code most closely equivalent to the one here involved is, as counsel contends, fornication, defined in section 22-1002, which occurs when an unmarried man or woman has sexual relations. By its terms, this section provides a maximum penalty of a $300 fine or six months' imprisonment, so that

it is clearly a misdemeanor within the petty offense category. Thus, applicant's conviction, both by the classification of the crime and the character of the punishment imposed, was a petty offense.

We hold, therefore, that applicant's immigrant visa was properly issued to him; that he was not excludable when he initially applied for admission and was admitted for permanent residence; and that the Form I-151 issued to him after that entry was valid, and properly issued.

The record shows that after applicant's admission in June 1965, he made several short visits to see his family in Canada. From his testimony, they were of the brief, casual and innocent type which do not, under the standards set out in *Rosenberg* v. *Fleuti*, 374 U.S. 449, require a finding that he made an "entry" on each return. (Inasmuch as we have found, contrary to the holding of the special inquiry officer, that applicant's original admission for permanent residence was lawful, we consider that applicant was, up to a specific point discussed below, entitled to the benefits of the *Fleuti* ruling.)

The record is incomplete as to when the applicant first became involved in a scheme (not clearly described) with two others to obtain money by unlawful acts. Applicant testified that while on a visit to Canada, probably in July 1965, when he was drunk, he agreed with the two young men to go ahead with the scheme, but that upon sobering up, he contacted them and told them not to go ahead with whatever had been planned. They apparently put the scheme into operation in spite of his request. His testimony is that he knew nothing of criminal proceedings until early December 1965 when he called one of the two persons with whom he was also involved in buying a house, and that person told him that there was a warrant out for his arrest and that he should phone his lawyer. He telephoned his lawyer in Canada, who confirmed the fact that there was outstanding a warrant for his arrest, and who arranged for applicant to meet him at Pemberton, North Dakota on the afternoon of the following day, so that he could drive the applicant back to Winnipeg and present him to the court. Applicant returned to Winnipeg with his attorney on or about December 5, 1965, appeared at the court, was served with an information charging him with conspiracy to utter and conspiracy to commit forgery, and was released. He returned to the United States for a few days to await the scheduled date of the trial. He returned to Canada on or about December 13, 1965, and the trial was held on December 15th. He pleaded guilty to both counts of the information and was sentenced on that same day. No prison sentence was imposed, but he was fined $500 plus $3.50 in costs, released in his own recognizance under $5000 bond, and placed on probation for a period of six months. He returned to the United

States three or four days later and resumed his normal pattern of living here, working during the week, taking weekend visits back to Canada to see his friends and family fairly often, until he was prevented from entering at the time these proceedings were instituted.

We have held, in *Matter of Jensen*, 10 I. & N. Dec. 747, that a conviction for forgery and uttering under Canadian law (there considered two separate crimes, but considered to be a single crime in most United States jursidictions) is a conviction of an offense involving moral turpitude. We have also held, in *Matter of S—*, 2 I. & N. Dec. 225, that if a substantive offense involves moral turpitude, then a conspiracy to commit that offense involves moral turpitude. In view of the position we set forth below, however, we need not and do not pass on whether this second conviction was for a petty offense.

Counsel urges that applicant's short trips to Canada on December 5 and December 13, undertaken on the advice of counsel, were not intended to be meaningfully interruptive of his permanent residence and, therefore, come under the *Fleuti* doctrine, so that, by implication, applicant did not then make, and is not now seeking to make, an "entry." We do not agree.

The trip considered by the Supreme Court in the *Flueti* case was a casual two-hour visit across the border, requiring no prior preparation and made for no purpose other than to visit. Nothing was done by Fleuti either at the time of his departure, during his two-hour period of absence, or at the time of his return to the United States, that was in any way relevant to his immigrant status or admissibility. The Government urged that Fleuti's mere intentional stepping over the border into Mexico rendered his physical return an "entry", subjecting him once again to all of the statutory criteria of admissibility for an alien seeking admission as an immigrant. The Supreme Court rejected this contention, pointing to the statutory exception contained in section 101(a)(13), which states that an alien with a lawful permanent residence in the United States is not to be regarded as making an "entry" if his departure from the United States "was not intended or reasonably to be expected by him." It then went on to hold:

We conclude, then, that it effectuates congressional purpose to construe the intent exception to § 101(a)(13) as meaning *an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence.* One major factor relevant to whether such an intent can be inferred is, of course, the length of time the alien is absent. Another is the purpose of the visit, for if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful. Still another is whether the alien has to procure any travel documents in order to make his trip, since the need to obtain such

items might well cause the alien to consider more fully the implications involved in his leaving the country. Although the operation of these and other possibly revelant factors remains to be developed "by the gradual process of judicial inclusion and exclusion." *Davidson* v. *New Orleans*, 96 U.S. 97, 104, 24 L. Ed. 616, 619, *we declare today simply that an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been "intended" as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an "entry" into the country on his return.* \* \* \* (At p. 462. Emphasis supplied.)

By the gradual process referred to, the holding in *Fleuti* has been extended to cover casual, innocent excursions to Mexico and Canada of several days' and even a week's duration (*Matter of Quintanilla-Quintanilla*, decided November 29, 1965, Int. Dec. No. 1537; *Zimmeman* v. *Lehmann*, 339 F.2d 943 (7th Cir., January 7, 1965; *etc.*). In such cases, the departure, absence and return were in no way relevant to the underlying ground of deportability or excludability charged other than that the Government claimed the return was an "entry" so that the statutory standards of admissibility must apply, or that it was an "entry" from which to date the running of a time limitation imposed by statute on a ground of deportability. We know of no instance in which it has been extended to cover an alien who is charged with being excludable or deportable because of an act or occurrence arising during or directly connected with the departure, absence or return. See, *Matter of Caudillo-Villalobos*, Int. Dec. No. 1423 aff'd *Caudillo-Villalobos* v. *Immigration and Naturalization Service*, 361 F.2d 329 (C.A. 5, 1966.) (Conviction for crime of incest during absence in Mexico—held to have made entry on return); *Matter of Corral-Fragoso*, Int. Dec. No. 1549 (assisting of aliens to enter the United States illegally, for gain, pursuant to arrangements made during absence in Mexico—held to have made an entry on return); *Matter of Alvarez-Verdusco*, Int. Dec. No. 1589 (conviction for attempt to smuggle narcotics into the United States from Mexico on return to United States—held to have made meaningful departure and to be attempting an entry when he sought to return); *Matter of Kolk*, Int. Dec. No. 1443 (return after short visit to Mexico on false claim of citizenship, thereby avoiding inspection—held to have made an entry); *etc.*

We consider as definitive in *Fleuti* the repeated references to "*an innocent, casual and brief excursion*". Applicant demonstrably was not making such a trip when he left on December 5th. He went to meet his attorney, at Pemberton, North Dakota, knowing that there was a warrant outstanding for his arrest on criminal charges in Canada, and that his attorney would be driving him from the United States border to the court from which that warrant had issued. He had no

certain knowledge of what would await him there, and there is nothing in the record to show that he might not have been detained or denied bail pending trial. The fact is that he was not detained, and that he returned to the United States a day or two later. We consider that the purpose and manner of applicant's departure on December 5th were such that it "can be regarded as meaningfully interruptive" of his permanent residence. On his return thereafter, he made an "entry". However, he was not excludable at the time of that entry, and was, therefore, properly admitted as a returning resident alien. Applicant's second trip, on December 13th, to be present for the trial of the criminal charges against him in the Winnipeg court, was likewise not an innocent, casual excursion. He had no way of knowing definitely what the outcome of that trip would be. Assuming that he knew from the outset that he would plead guilty to the charges, there was no certainty that he would be fined rather than imprisoned, that he would be released in his own recognizance and be able to return to the United States with the next few days. The crimes of which he was convicted, two counts of conspiracy to commit an indictable offense, carry the same possible penalty as the substantive offense which was the subject of the conspiracy (cf. section 108.(1)(c), *Tremeear's Annotated Criminal Code—Canada*, Sixth Edition) ; forgery is punishable by imprisonment of up to 14 years, and uttering is punishable by the same length of imprisonment (cf. *Tremeear's Annotated Criminal Code—Canada*, sections 310.(1) and 311.(1)). His trip to Canada for this purpose can, even more than the December 5th trip, be regarded as meaningful by interruptive of his permanent residence. Thus, on his return three or four days after the disposition of the criminal case, he made an "entry".

When applicant entered the United States on or about December 18 or 19, 1965, he was an alien who had twice been convicted of crimes involving moral turpitude. He was excludable under the provisions of section 212(a)(9). It is not necessary to decide whether conspiracy to commit forgery and uttering comes within the petty offense classification. Applicant already had a conviction for a petty offense and this second conviction, even if also a petty offense, rendered him excludable because the proviso to section 212(a)(9) specifies that the petty offense exemption applies to an alien who has committed only one such offense. If it was not a petty offense, then this conviction, without more, would make the applicant excludable.

Thus, when applicant made his entry on or about December 18 or 19, 1965, he was not admissible and should not have been admitted as a returning resident alien. As one who was excludable and who was not then or now eligible for any waiver of that excludability, he no

longer could be considered as having been "lawfully admitted for permanent residence" (cf. section 101(a)(20), Immigration and Nationality Act). On each of his returns thereafter from trips to Canada he was not within the exception to section 101(a)(13) interpreted in *Fleuti* and must be deemed to have made an entry. The present application for admission is also an application to make an "entry" into the United States.

As one who is no longer a returning resident alien, applicant cannot meet the documentary requirements for entry by presentation of the Form I-151, and is properly excludable on the documentary charge as well as the charge laid under section 212(a)(9).

ORDER: It is ordered that the decision of the special inquiry officer, for the reasons set forth above, be and the same is hereby affirmed.