MATTER OF ACOSTA

In Deportation Proceedings

A-12698629

*Decided by Board April 19, 1974*

Respondent, a permanent resident alien, who departed to Mexico to sign a bond book during the pendency of his appeal from a criminal conviction there, and who upon reporting was taken into custody and imprisoned for approximately six months, made an entry within the meaning of section 101(a)(13) of the Immigration and Nationality Act upon which to predicate a ground of deportation when he returned from Mexico following his imprisonment, since his departure was occasioned by "legal process" within the proviso to section 101(a)(13) of the Act and his six months' imprisonment in Mexico was not a brief absence. [*Rosenberg* v. *Fleuti*, 374 U.S. 499 (1963), inapplicable.]

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude committed within five years after entry.

ON BEHALF OF RESPONDENT:
Victor R. Arditti, Esquire
407 Bassett Tower
El Paso, Texas 79901

ON BEHALF OF SERVICE:
David L. Milhollan
Appellate Trial Attorney

In a decision dated December 14, 1972, the immigration judge found the respondent not to be deportable as charged and ordered the proceedings terminated. The Service has appealed from that decision. The appeal will be sustained.

The respondent is a male alien, a native and citizen of Mexico, who was admitted to the United States as an immigrant on May 12, 1961. The record establishes that he was convicted of burglary in a Texas state court on December 18, 1970. The record of conviction shows that the crime was committed on September 20, 1970. The respondent was sentenced to confinement for two years in the Texas state penitentiary.

Burglary is a crime involving moral turpitude. See *Matter of M—*, 5 I. & N. Dec. 642 (BIA 1954); *Matter of M—G—*, 5 I. & N. Dec. 531 (BIA 1953); *Matter of Z—*, 5 I. & N. Dec. 383 (BIA 1953). The issue on appeal is whether the crime was committed within five years after "entry" as specified in section 241(a)(4) of the Act.

666

Although there is some confusion in the record due to conflicting statements by the respondent, we agree with the immigration judge's findings of fact. The respondent was convicted of the crime of "lesiones," or assault, in a court in Juarez, Chihuahua, Mexico on December 26, 1967, and was sentenced to serve two years and six months in prison. Prior to his trial, and later pending an appeal from his conviction, the respondent was released on bail and was required to report weekly to the clerk of the court in Juarez for the purpose of signing the bond book.

The respondent made these weekly trips to Juarez for eight or nine months during 1967 and 1968, returning each time to his home in El Paso, Texas. Sometime during June or July 1968, however, upon making his weekly visit to Juarez, the respondent was taken into custody and placed in jail to serve his sentence. Apparently this was the result of the dismissal of his appeal by the State Supreme Court of Chihuahua on April 6, 1968. The respondent was released from prison in approximately the middle of December 1968 and returned immediately to El Paso.

It appears that the respondent made one more brief visit to Mexico on or about January 10, 1969 for the purpose of purchasing groceries. The immigration judge concluded that the respondent's return to El Paso after purchasing groceries was not an "entry" for immigration purposes under the principles laid down in *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963). We agree with this conclusion.

The immigration judge also concluded, under the *Fleuti* doctrine, that the respondent did not make an "entry" upon returning to this country after any of his various weekly departures to Mexico for the purpose of signing the bond book, including the departure which resulted in his incarceration in a Mexican jail for six months. We cannot agree with this conclusion.

Section 101(a)(13) of the Act provides:

"The term 'entry' means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided*, That *no person whose departure from the United States was occasioned by* deportation proceedings, extradition, or other *legal process shall be held to be entitled to such exception.*" (Emphasis added.)

In *Rosenberg* v. *Fleuti*, *supra*, the Court held that an innocent, casual, and brief excursion by a resident alien outside the borders of the United States may not have been "intended" as a departure

667

disruptive of his resident alien status and therefore may not subject him to the consequences of an "entry" to the United States upon his return.

The case before us is not within the scope of *Fleuti*. The respondent's departure to Mexico to sign the bond book was a departure occasioned by legal process and as such is squarely within the proviso to section 101(a)(13). *Matter of Caudillo-Villalobos*, 11 I. & N. Dec. 15 (BIA 1965), aff'd *Caudillo-Villalobos v. INS*, 361 F.2d 329 (C.A. 5, 1966), is directly in point. That case involved a resident alien who had been arrested and jailed in Mexico for two months and thereafter was required to report periodically to the clerk of the court's office in Juarez to sign the bond book. We held that the *Fleuti* doctrine was inapplicable to that alien's situation since (1) his two-month stay in jail was not a brief, casual, and innocent absence, and (2) his departures from the United States were occasioned by legal process.

The present respondent knew when he departed for Mexico after the dismissal of his appeal that he might be taken into custody and required to serve his sentence. We have held that where a resident alien departs for a foreign country knowing that he may be forcibly detained in that country on a pending criminal charge, his excursion is meaningfully interruptive of his residence in the United States. *Matter of Wood*, 12 I. & N. Dec. 170 (BIA 1967). When an alien returns to this country after making such a departure he makes an "entry" under section 101(a)(13). Moreover, since the respondent in the present case served six months in a Mexican jail, his absence on that occasion cannot be characterized as "brief" within the meaning of *Fleuti. Matter of Caudillo-Villalobos, supra*; cf. *Matter of Janati-Ataie*, Interim Decision No. 2170 (A.G. 1972).

The immigration judge concluded that he was bound by the decisions of the Fifth Circuit Court of Appeals in *Yanez-Jacquez v. INS*, 440 F.2d 701 (C.A. 5, 1971), and *Vargas-Banuelos v. INS*, 466 F.2d 1371 (C.A. 5, 1972). Those cases are distinguishable. In *Yanez-Jacquez* the court found that a resident alien's brief departure from the United States for the purpose of avenging an assault did not necessarily preclude the application of *Fleuti*. The opinion stated that the holding was "necessarily limited to its facts." 440 F.2d at 704. In *Vargas-Banuelos*, the court concluded that a resident alien who left the United States for the purpose of making a brief condolence call, and who became involved in a criminal scheme after his departure, was not precluded from receiving the benefits of *Fleuti*.

Neither of the above cases controls the present fact situation. The law controlling the present case is stated in *Matter of Cau-*

*dillo-Villalobos, supra.* Our holding in that case has been accepted by the Fifth Circuit. *Caudillo-Villalobos* v. *INS, supra.*

We conclude that the respondent made an "entry" as defined in section 101(a)(13) when he returned from Mexico after serving his jail sentence. Since that "entry" occurred within the five years preceding the respondent's commission of a crime involving moral turpitude, we conclude that he is deportable under section 241(a)(4) of the Act.

The respondent does not appear to be eligible for any discretionary relief from deportation. He has designated Mexico as the country to which he is to be deported. We shall sustain the Service appeal and order the respondent's deportation to Mexico on the charge contained in the Order to Show Cause.

**ORDER:** The appeal is sustained.

*Further order:* The respondent shall be deported to Mexico on the charge contained in the order to show cause.