In the Matter of Petition for Naturalization of Thomas Henry EDGAR.

No. 286634.

United States District Court
E. D. Michigan, S. D.

May 5, 1966.

Cornelius J. Finnen, Detroit, Mich., for petitioner.

Jack C. Stewart, Asst. Director for Citizenship, John C. Midanek, Naturalization Examiner, for Immigration Service.

TALBOT SMITH, District Judge.

 The question before us may be very simply stated: Has the petitioner, Thomas Henry Edgar, the "good moral character" required by law for naturalization?[1] He is married, he has a daughter, he is gainfully employed and he is supporting his family. The question arises because, we find, agreeing with the Examiner, that he has committed adultery, as defined under the laws of the State of Michigan.[2] It came about in this way: After his wife came to this country, she became unhappy. She didn't like it here. Petitioner, however, felt that this was where he could make a better living. In addition there was a problem between them about raising a family, there being no children of the marriage. The record disclosures on the marital controversies are meager, but it is clear that there was friction and discord. One day the wife moved out, without further discussion, and went East. She has since remarried. After the lapse of some two years, petitioner began keeping company with a single girl, a fellow employee. Sporadic acts of intercourse occurred, and pregnancy resulted. At this juncture, petitioner filed for divorce, which was granted, following which marriage between the parental parties took place. The child was born in October of 1964 and all are now living together as a family.

 There is no doubt, as related above, that the petitioner had sexual relations with a woman other than his wife during the statutory period, and, furthermore, that under Michigan law such relations were adulterous. But these findings are not dispositive of the issue presented for it is well established under the Federal cases that adultery and exclusion are not synonymous. The difficulty here is that the word adultery is a word of infinite gradations of meaning. We have civil adultery and we have criminal adultery. Some states require that each of the partners be married to another, whereas in others it is sufficient

---

1. Sections 316(a) and 101(f) of the Immigration and Nationality Act, 8 U.S.C.A. § 1427(a) and 1101(f). The latter reference provides:

 "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—(2) one who during such period had committed adultery;"

2. M.S.A. § 28.218, Comp.Laws 1948, § 750.29.

if one of them is married to another. Some require continuing acts while in others a single transgression will suffice. We need not exhaust the catalog. It is clear that we are not looking to see whether a petitioner is technically guilty of adultery under local law. We are considering a federal statute. Article I, Section 8 of the United States Constitution empowers the Congress "[t]o establish an *uniform* Rule of Naturalization", and we must interpret the relevant Congressional acts in the light of the Constitutional provision. (Emphasis ours.) We conclude, on this phase of the case, with Judge Marovitz (In Re Briedis, 238 F. Supp. 149, D.C., Ill.1965) that in reaching decision upon the meaning of the federal act we are not remitted to a patchwork of state laws but that "the better view is to develop a uniform federal standard when interpreting a statute relating to the federal right to citizenship."

■ Thus we squarely face what is in our judgment the crucial issue in the case, namely, the interrelation of the commission of adultery, however defined, with the possession of the statutorily required good moral character. We are now in an area of the utmost doubt and indecision. Rulings will vary, even within circuits, as various of the factors making up the sum total of one's moral character are stressed. It was Learned Hand who pointed out, in Schmidt v. United States, 177 F.2d 450, 2 Cir. 1949 (a case involving sexual intercourse between an unmarried alien and a single woman) that the statutory phrase "good moral character" defies explicit definition, that it demands an estimate by the court, "necessarily based on conjecture, as to what people generally feel." Is the situation, then, viewed in the light of community sentiment, so reprehensible as to demand exclusion, lest the purity of our stock be contaminated by the influx of degraded strains of character? The cases are all at sixes and sevens. The de-terminations made vary from case to case, from decade to decade, and, indeed, from judge to judge, as the scales upon which the facts are weighed vary in delicacy, as we of the courts "resort to our own conjecture, fallible as we recognize it to be." [3]

■■ But from all the confusion of facts, and cases, and community standards, one factor emerges with the utmost clarity: the vast majority of cases have undertaken an inquiry into palliative facts as the sins are weighed upon the scales. A doctrine of extenuation has emerged, arguably with Congressional sanction.[4] To put it more bluntly, there is no automatic equating of adultery with bad moral character.

■ Basically, the prohibitions against adultery, however defined, are designed to safeguard and protect the marriage relationship, to "guard the sanctity of marriage." People v. Lipski, 328 Mich. 194, 48 N.W.2d 325 (1950). Or, as put by the Ninth Circuit in Wadman v. Immigration and Naturalization Service, 329 F.2d 812 (1964): "[Congress] has found offensive that extramarital intercourse which tends to destroy an existing marriage; which evidences disregard of marital vows and responsibilities." The Wadman court, in fact, concluded (although relying in part upon the California adultery statute) in words peculiarly appropriate to the facts before us:

\* \* \* "In our judgment isolated acts of intercourse by a married person, not amounting to cohabitation, occurring after that person's spouse has, without justification, willfully and permanently abandoned the marital relationship, do not constitute adultery as that term is used in § 101(f) (2) and may not be held as matter of law to constitute bad moral character under § 244." \* \* \*

---

3. 177 F.2d p. 451.

4. See the comprehensive legislative history found in Dickhoff v. Shaughnessy, 142 F. Supp. 535 (1956).

These and other courts have found, and we agree, that there are circumstances which may justify, indeed, in our judgment, require, a finding that petitioner does have the good character prerequisite to citizenship, despite the commission of adultery. We find the petition of Mr. Edgar to be such a case. Here the petitioner was not a party to a viable marriage at the time he began dating Miss Parenti. His wife had left him voluntarily some two years before, to go to New York and live with some girls. While legally still in effect, the relationship of the parties in the marriage had been, for all practical purposes, severed. Petitioner's relationship with Miss Parenti did not begin until long after his wife had left him. He testified that he saw her exclusively, and that after a few isolated acts of intercourse a child was conceived. At this point, petitioner took immediate steps to sever the existing legal ties of marriage and was granted judgment of divorce by default. He married Miss Parenti as soon as possible thereafter and he, his wife, and child now live together as a family. We believe that there is little question that such conduct, while not to be condoned, should not be viewed as so morally reprehensible, or of such evil and meretricious character as to compel this court to declare that Mr. Edgar, is, by reason thereof, a man of bad character. With Judge Hand, we do not believe "that the present sentiment of the community views as morally reprehensible such faithful and long continued relationship(s) under the circumstances here disclosed." Ibid.

In view of the foregoing, this court makes the following Conclusions of Law:

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter in this proceeding.

2. Petitioner has established that he is and has been a person of good moral character for the period of five years immediately preceding the date of his filing of his petition for naturalization.

3. Accordingly, the recommendation of the United States Naturalization Examiner that the petition be denied on the ground that the petitioner has failed to establish good moral character during the period required by law is overruled, and the petition is approved.

An appropriate order may be presented.