**In the Matter of the Petition for
Naturalization of C–C–J–P
No. 456866.**

United States District Court
N. D. Illinois, E. D.
April 24, 1969.

———————◆———————

Harold W. Calhoun and Milton C. Jossey, Immigration and Naturalization Service, U. S. Department of Justice, Chicago, Ill., for Immigration and Naturalization Service.

**MEMORANDUM ORDER**

JOSEPH SAMUEL PERRY, District Judge.

Petitioner, C–C–J–P filed her petition for naturalization under Section 316(a) Immigration and Nationality Act. (8 U.S.C. § 1427).

This court has examined said petition and the file in the above cause together with the findings of fact, conclusions of law and recommendation by the designated Naturalization Examiner that said Petitioner's petition for naturalization be granted.

The statute (8 U.S.C. § 1427) concerning the requirements for naturalization is quite explicit. It provides, in part,—

"(a) No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years  *  *  *  and (3) during all the period referred to in this subsection has been and still is a person of good moral character  *  *  *."

Turning to 8 U.S.C. § 1101, which sets forth the definitions of terms used in the chapter, we find that sub-paragraph (f) (2) thereof provides—

"(f) For the purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

\*     \*     \*     \*     \*     \*

"(2) one who during such period has committed adultery."

Briefly summarizing a sworn statement which Petitioner made to the Immigration and Naturalization Service officer in the matter of her petition for naturalization: She met Pierre in Haiti about 1951 and they had a child in 1953. In 1955 she married Theodore and they lived together in Washington until April, 1956, when she returned to Haiti. When she came back to the United States in August of 1956, her husband,

768

Theodore, had disappeared and she was unable to find him. She consulted an attorney in Washington in 1956 about an annulment of her marriage to Theodore because she "had reason to believe that Theodore was married to another woman at the time he married me;" that since she could not find Theodore she could not get the annulment. In 1960 she saw Pierre in New York. He knew she was not living with her husband, Theodore, and asked her to live with him. She accepted. After their second child was born she wrote to the Archdiocese of Chicago in an effort to obtain a church annulment of her marriage to Theodore and in 1962 was informed that her marriage to Theodore was valid because "Theodore was not married to the woman he had lived with before he married me." Petitioner further stated that she intended to get a divorce from Theodore but kept postponing it. In 1967 she did obtain a divorce and married Pierre on June 17, 1967.

It is the view of this court that Petitioner does not meet the statutory requirements for naturalization and that the Examiner should have applied the rationale of In re Zunker, D.C., 283 F. Supp. 793, and Petition for Naturalization of O———N———, D.C., 233 F. Supp. 504. Each of those cases held that an adulterous relationship entered into by an alien during the five years immediately preceding the filing of a petition for naturalization barred the requisite finding of good moral character during that time.

In his Report, the Examiner suggests that—

"In the present posture and under the present Act, perhaps the better policy would be the adoption of a federal standard allowing citizenship, notwithstanding the commission of adultery as the term is defined by the state law, where neither party to the relationship has been convicted of criminal adultery during the statutory period; where prior to the first adulterous act the existing marriage or marriages had been permanently disrupted; where the extramarital relationship did not tend to destroy an existing marriage or marriages nor evidence disregard of marital vows and responsibilities; and where the petitioner and the other party to the adultery have married and reside together in a bona fide marital relationship."

■ It is not within the province of either the Examiner or this court to enlarge, by interpretation, the intent of Congress—either by reading into the statute provisions which Congress has seen fit to omit therefrom or by granting citizenship to a petitioner who lacks one of the clearly stated requirements of the statute.

■ The record in this case establishes, and the Examiner concedes in his Conclusions, that during the period for which she is required to establish good moral character the Petitioner has committed adultery.

The finding required by the statute of good moral character cannot be made in this case and

It is therefore ordered that the petition for naturalization be and it hereby is denied.