**Petition for Naturalization of Rolf Richard SCHROERS.**

**No. 791185.**

United States District Court, S. D. New York.

Nov. 26, 1971.

Joan Arrowsmith, Dept. of Justice, Immigration and Naturalization Service.

## MEMORANDUM

TENNEY, District Judge.

Petitioner Rolf Richard Schroers seeks naturalization under Section 316(a) of the Immigration & Nationality Act, 8 U.S.C. § 1427 (1971) (hereinafter referred to as the "Act"). The only question raised by his petition is whether he has established good moral character during the five-year period required by law, that is, since June 4, 1964. The designated naturalization examiner has submitted findings of fact and conclusions of law, along with her recommendation that the petition be granted despite petitioner's admitted "adultery" within the statutory period, since his conduct did not disrupt a via-

ble marriage and the illicit cohabitation was adjusted by marriage.

Briefly, by way of background, petitioner was first married on December 13, 1961 to Marianne Walther, who bore him twins on December 14, 1961. Petitioner, however, never lived with his first wife but married her solely to give his children their legitimacy. That first marriage ended amicably in divorce in Mexico on November 26, 1966, and petitioner has continuously supported the children. Prior to his divorce, however, petitioner and his present wife engaged in sexual intercourse from 1964 until May 1965, during which time they lived together. Shortly after Mr. Schroers' divorce, he married his present wife, Anne Waldman, on June 20, 1967.

The question posed is whether petitioner's engaging in sexual intercourse during the relevant period precludes a finding that he is of good moral character, in light of the statutory command of Section 101(f) of the Act that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was . . . one who during such period has committed adultery." 8 U.S.C. § 1101(f) (2).

While the language of Section 101(f) of the Act appears to be clear and unequivocal, there is no federal definition of the word adultery, which term was added to the statutory framework in 1952. Prior to 1952, the statutory test for citizenship was merely "good moral character" which permitted the courts to handle each case on its particular facts and resulted in the doctrine of "extenuating circumstances" which permitted the granting of a petition for citizenship despite a petitioner's having engaged in extramarital sexual intercourse within the statutory period, provided the relationship in question had a certain degree of permanence, stability and respectability. E. g., Petitions of Rudder, 159 F. 2d 695, 698 (2d Cir. 1947). In construing the language added by the 1952 amendment, the courts have come to opposite conclusions as to whether Congress intended to incorporate into the law the definition of adultery as it is defined by the legislature of the state in which the petitioner lives and in which the district court is located. *Compare* In re C–C–J–P, 299 F.Supp. 767 (N.D. Ill.1969) and Petition for Naturalization of O-----N-----, 233 F.Supp. 504 (S.D.N.Y.1964) *with* In re Edgar, 253 F.Supp. 951 (E.D.Mich.1966) *and* In re Briedis, 238 F.Supp. 149 (E.D.Ill.1965). The courts do agree, however, that the legislative history of Section 101(f) of the Act as to whether Congress intended to incorporate the state definitions of adultery is ambiguous and that Congress and the Constitution favor a uniform test for citizenship. In re Johnson, 292 F.Supp. 381, 383 (E.D.N.Y.1968); In re Briedis, 238 F.Supp. at 151; Petition for Naturalization of O-----N-----, 233 F.Supp. at 508.

Uniformity, however, cannot be attained if resort is had to the laws of the 50 states to determine whether a particular applicant for citizenship has committed adultery. "[T]he possible divergencies in meaning of the term 'adultery' in the federal statute expand rapidly once the applicability of the laws of the states is considered." In re Johnson, 292 F.Supp. at 382. For example, in some states adultery can be committed only if the woman is married and in that case both parties to the sexual intercourse commit adultery while otherwise neither party does. In a second group of states, adultery is committed solely by the married party to the extra-marital intercourse; the other party is guilty of fornication. In a third group of states, both parties commit adultery, if either is married. The situation becomes even more diverse when one considers that in certain states defenses are available to a person charged with adultery; e. g., a policy of forgiveness exists if the parties later intermarry; the conduct is not considered adultery unless it is accompanied by open and notorious cohabitation; and ignorance of the marital status of the

other party constitutes a defense. In re Johnson, 292 F.Supp. at 382–383. Certainly, Congress did not intend to create different tests for naturalization depending on something as fortuitous as where the petitioner engaged in the extra-marital intercourse or where the petitioner resides at the time he seeks to be admitted to citizenship. Rather than apply the patchwork standards of each state, this Court thinks the better approach is "to develop a uniform federal standard when interpreting a statute relating to the federal right to citizenship." In re Briedis, 238 F.Supp. at 151; *accord,* In re Edgar, 253 F.Supp. at 953. Thus, this Court concludes that Congress in using the word "adultery" was expressing concern over extra-marital intercourse which tends to destroy an existing, viable marriage and which would represent a threat to public morality. In re Edgar, 253 F.Supp. at 954; In re Briedis, 238 F.Supp. at 151.

Therefore, since petitioner's first marriage was one in name only and entered into solely for the purpose of giving legitimacy to the children he had fathered and whom he has continuously supported, the extra-marital intercourse that occurred within the statutory period did not hurt his first wife or their marriage, and the element of cohabitation in this case has been adjusted by marriage to his present wife.[1] Thus, this Court concludes that petitioner has established good moral character during the requisite period and that the extra-marital intercourse in which he engaged during that time is not the sort with which Section 101(f) of the Act, 8 U.S. C. § 1101(f) (2), is concerned.

Accordingly, and for the foregoing reasons, the petition for naturalization is hereby granted.

So ordered.

---

1. Petitioner, in marrying his first wife, did what in most communities would be considered as "honorable", yet had petitioner chosen not to do the "honorable" thing the extra-marital intercourse in which he engaged during the statutory period would not be considered adultery under present New York law. *See* N.Y. Penal Law § 255.17 (McKinney's Consol. Laws, c. 40, 1967). It would indeed be ironic and unjust that by doing the "honorable" thing, petitioner precluded himself from establishing his good moral character, whereas had he chosen to do otherwise his good moral character would not be in question.