MOON HO KIM, Petitioner,

v.

UNITED STATES IMMIGRATION
AND NATURALIZATION
SERVICE, Respondent.

No. 73–1965.

United States Court of Appeals,
District of Columbia Circuit.

March 5, 1975.
Rehearing Denied March 31, 1975.

Robert M. Price, Washington, D. C., was on the brief for petitioner.

John L. Murphy, Chief, Government Regulations Section, U. S. Dept. of Justice, and Richard I. Chaifetz, Atty., Dept. of Justice, were on the brief for respondent.

Before TAMM and LEVENTHAL, Circuit Judges, and MERHIGE,* United States District Judge for the Eastern District of Virginia.

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

MERHIGE, District Judge.

Petitioner, a citizen of the Republic of Korea, pursuant to § 106 of the Immigration and Nationality Act, 8 U.S.C.A. § 1105a(a)(1), seeks review of a final order of an Immigration Judge, appealed to and affirmed by the Board of Immigration Appeals, denying him the privilege, in lieu of deportation, of voluntary departure.

The issue here centers on the lack of uniformity on the part of the respective states as to the definition of adultery.

Briefly, petitioner, then married to a woman living in Korea, entered the United States as a visitor and, on March 21, 1972, was accorded the status of student with authority to remain in this country until September 1973. Prior to the latter date, however, he concluded his studies at Roosevelt University, Chicago, Illinois. Not having sought nor obtained permission of the immigration authorities to attend any other educational institution, as required under his then status, he was deemed to have breached the conditions of his nonimmigrant status and deportable under Section 241(a)(9) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a)(9).

Admitting his deportability he sought the privilege of a voluntary departure pursuant to § 244(e) of the Act, 8 U.S. C.A. § 1254(e), thereby invoking the issue as to whether, as required for voluntary departure permission, he, prior to his wife's arrival in the United States, having had sexual relations with a Korean woman whom he met in Los Angeles, California, was a person of good moral character. The record supports the contention of petitioner's paramour who testified at the deportation hearing that shortly after meeting they maintained in California for some six weeks a husband-wife relationship at petitioner's residence. Thereafter she left California and returned in December 1970, having knowledge of petitioner's married status, where the prior relationship was resumed until January 1971 at which time the lady left to visit her native country. The record reflects that while in California at least one other person knew of the relationship between the parties. In March of 1971, when petitioner commenced his studies at Roosevelt University in Chicago, Illinois, the relationship developed into a more permanent arrangement, inasmuch as the parties resided together as Mr. and Mrs. Kim in at least two different apartments in that city until the true Mrs. Kim arrived in this country in November 1972, and the relationship ceased.

The issue, then, is whether Kim has established good moral character in view of the unrebutted evidence of his relationship with the unmarried female, which the Immigration Service holds to be adultery and hence requiring, under Section 101(f) of the Act, 8 U.S.C. § 1101(f), a conclusion that as a matter of law he cannot be regarded as a person of good moral character for the purpose of permitting him a voluntary deportation. We reverse.

Section 101(f) of the Act, 8 U.S.C.A. § 1101(f), provides in pertinent part:

(f) For the purposes of this chapter—

No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

. . . . .

(2) one who during such period has committed adultery;

While § 101 of the Act, 8 U.S.C.A. § 1101, does not suffer from a paucity of definitions, nowhere is the word or term "adultery" defined. This Court is satisfied that Congress intended uniformity in the application of its enactments. While we find it unnecessary to address ourselves as to whether there is a Constitutional requirement with respect to uniformity of immigration laws, as there is for citizenship, we are conscious of the interlocking features of immigration and naturalization.

The legislative history of the Act and the plethora of definitions incorporated in it, Title 8 U.S.C.A. § 1101(a), leave little doubt that Congress was seeking

uniformity. To adopt a rule endorsed by the respondent Service would be to destroy any meaningful uniformity as to the definition of "adultery" as used in the Congressional enactment.

The divergencies in meaning are expandable to utter diversification once recourse to the law of the state of the alleged offense is resorted to. See In re Johnson, 292 F.Supp. 381 (E.D.N.Y.1968). A number of states follow the common law rule that adultery depends upon the marital status of the woman without regard to the marital status of the man. Others require open and notorious cohabitation. Still others have adopted the ecclesastical rule that only the married party to the extra-marital relationship is guilty of adultery. Others hold that adultery is committed if either party is married.[1]

■ Section 244 of the Act, 8 U.S.C.A. § 1254, was enacted for the purpose of granting to the Attorney General the discretion to "ameliorate hardship and injustice." See Wadman v. Immigration and Naturalization Service, 329 F.2d 812 (9th Cir. 1964).[2] We conclude that to adopt the theory of the respondent that the definition of adultery as used in the Act is such as applies in the state where the extra-marital act took place, is to frustrate the Congressional intent in enacting Section 244 of the Act.

The exercise of the Attorney General's discretion is not to be bottomed on what one court has described as a "patchwork standard of each state." See Petition of Schroers, 336 F.Supp. 1348 (S.D.N.Y. 1971). We concur with that court that the appropriate approach is the application of a uniform federal standard as to the meaning of adultery as used in the Act which we find, as did Judge Tenney in Petition of Schroers, *supra*, to be extra-marital intercourse which tends to destroy an existing, viable marriage, and which would represent a threat to public morality. Neither the Board nor this court is concerned with whether petitioner is a person of the very highest moral character, but rather with whether petitioner was guilty of an adultery, defined under a national standard, that completely negatives good moral character. In the instant case the petitioner's relationship with another female was not one that tended to destroy his marriage, for it only existed while he and his wife were living, for some years, in different countries, and the record is clear that he ended his extra-marital relationship upon the arrival of his wife in this country and as of the date of the deportation proceedings they were living together. The record fails to disclose that petitioner's conduct represented a threat to public morality. There is no evidence that the public, or any portions thereof, was aware of any immoral conduct on the part of petitioner and the unmarried woman.

■ We conclude, therefore, that the finding of the Board of Immigration Appeals that petitioner was not eligible for the privilege of voluntary departure provided for in § 244(e) of the Immigration and Naturalization Act, 8 U.S.C. § 1254(e), by reason of his having failed to show that he was a person of good moral character because of his relationship with the witness Sue Hyun Chai, was erroneous. Since the order appealed from was premised solely on an erroneous conclusion of the Board that petitioner had committed adultery within the meaning of the Act, it follows that its ruling must be reversed.

Accordingly, the decision of the Board of Immigration Appeals is reversed and remanded for further proceedings not inconsistent with this opinion.

So ordered.

1. See Moore, The Diverse Definition of Criminal Adultery, 30 U. Kansas City Law Review, 219, 233 (1962).

2. Both *Wadman* (*supra*, text) and Cabrera v. Immigration & Naturalization Service, 415 F.2d 1096 (9th Cir. 1969), hold that adultery is not a bar as a matter of law from a showing of good moral character.