HAROLD D. GEHRKE, City Attorney Wauwatosa
You have requested my opinion on the interrelationship of sec. 66.054 (11), Stats., and sec. 111.32 (5)(h), Stats. Specifically you have asked the following question:
 Bartender licenses as provided for under Wis. Stats. 66.054 (11) limit a municipality to issuing a bartender's or "operator's" license ". . .only to persons . . . who are of good moral character. . .".
 The newly enacted law [sec. 111.32 (5)(h), Stats.] pertains to discrimination based upon a conviction record unless the circumstances of the charge "substantially relate to the circumstances of the particular job or licensed activity." It is my opinion that convictions involving theft, burglary and armed robbery substantially relate to a person's "good moral character" or lack thereof and may properly be considered by a governing body in its determination as to whether to issue a license. It is difficult to think of any crime involving malem in se that would not "substantially relate" to a person's good moral character. Since the *Page 203 
licensing municipality has a duty not to issue a license to a person who is not of good moral character and while at the same time is obligated to comply with the provisions of 111.32 (5)(h), your legal opinion would be greatly appreciated for purposes of providing guidelines as to which criminal convictions may be considered.
In answer to your question, it is my opinion that, in light of the newly enacted anti-discrimination statute, when a former offender applies for a license, all of the facts and circumstances bearing on the issue of "good moral character" should be considered as a whole, regardless of the nature of the offense.
Section 66.054, Stats., provides for licenses for fermented malt beverages. Subsection (11) provides as follows:
 (11) OPERATOR'S LICENSES. (a) Every city council, village or town board may issue a license known as an "Operator's" license, which may be granted only upon application in writing, and which may not be required of any person or for any purpose other than to comply with par. (b). An operator's license may be issued only to persons 18 years of age or over who are of good moral character. Operators' licenses shall be operative only within the limits of the city, village or town in which issued. For the purpose of this subsection and s. 176.05 (11) any member of the immediate family of the licensee or person holding a manager's license shall be considered as holding an operator's license.
 (b) There shall be upon premises operated under a Class `B' license, at all times, the licensee or some person who has an operator's license and who is responsible for the acts of all persons serving as waiters, or in any other manner, any fermented malt beverages to customers. No member of the immediate family of the licensee under the age of 18 years shall serve as a waiter, or in any other manner, any fermented malt beverages to customers unless an operator 18 years of age or over is present upon and in immediate charge of the premises. No person other than the licensee shall serve fermented malt beverages in any place operated under a Class `B' license unless he possesses an *Page 204 
operator's license, or unless he is under the immediate supervision of the licensee or a person holding an operator's license, who is at the time of such service upon said premises.
Thus, the license entitles the holder to supervise the serving of fermented malt beverages to customers in an establishment operating under a Class B license.
Class B licenses are issued to establishments such as bars, restaurants and hotels, as opposed to grocery stores, which are issued Class A licenses for the sale of fermented malt beverages, sec. 66.054 (5), Stats. The only statutory requirements for issuance of Class B licenses are that the person be eighteen years of age or older and be of good moral character. Certain statutes specifically prohibit benefits to persons who have a record of criminal conviction, such as sec. 6.03, Stats., which disenfranchises felons; there is nothing unconstitutional about such outright prohibitions, DeVeau v. Braisted, 363 U.S. 144,158-160 (1960); Upshaw v. McNamara, 435 F.2d 1188 (1st Cir. 1970). But, there is certainly nothing contained within the language of this statute which would indicate that persons who have been convicted of a criminal violation should be denied a license on that basis alone, without further inquiry.
On the other hand, sec. 111.32 (5)(h), Stats., in conjunction with sec. 111.325, Stats., specifically prohibits discrimination on the basis of an arrest or conviction record, except in certain circumstances:
 111.325 UNLAWFUL TO DISCRIMINATE. It is unlawful for any employer, labor organization, licensing agency or person to discriminate against any employe or any applicant for employment or licensing.
Section 111.32 (5)(h), Stats., provides, in relevant part:
 The term "conviction record" includes, but is not limited to, information indicating that a person has been convicted of any felony, misdemeanor or other offense, placed on probation, fined, imprisoned or paroled pursuant to any law enforcement or military authority. It is discrimination because of arrest record or conviction record:
 . . . . *Page 205 
 2. For any employer, labor organization, licensing agency or employment agency to refuse to hire, employ, admit or license any person, or to bar or terminate any person from employment, membership or licensing or to discriminate against any person in promotion, compensation, terms, conditions or privileges of employment, membership or licensing, or otherwise to discriminate against any person because such person has an arrest record or a conviction record; provided, however, that it shall not be unlawful:
. . . .
 b. For an employer or licensing agency to refuse to employ or license, or to bar or terminate from employment or licensing, any person who has been convicted of any felony, misdemeanor or other offense the circumstances of which substantially relate to the circumstances of the particular job or licensed activity.
 c. For an employer or licensing agency to refuse to employ or license, or to bar or terminate from employment or licensing, any person who is not bondable under a standard fidelity bond or an equivalent bond where such bondability is required by state or federal law, administrative regulation or established business practice of the employer.
The question, then, is whether a conviction record substantially relates to the statutory requirement of "good moral character" in sec. 66.054 (11), Stats., so that refusal to issue a license on the basis of that conviction record is not contrary to the statutory prohibition against discrimination.
The term "good moral character" is crucial to this inquiry; yet, attempts to imbue it with recognizable standards have resulted in nebulous definitions, at best.
The Wisconsin Supreme Court has not had numerous occasions to consider what makes up a "good moral character." In 1889, it said:
 To entitle a person to practice law in Wisconsin, he must, in addition to the other requisites, be "of good moral character." . . . The words "good moral character" are general in their application, but of course they include all the elements essential to make up such a character. Among these are common honesty and veracity, especially in all professional intercourse. *Page 206 
In re O_____, 73 Wis. 602, 618, 42 N.W. 221, 225 (1889). More recent evaluations have recognized the vagueness of the term:
 It was Learned Hand who pointed out . . . that the statutory phrase "good moral character" defies explicit definition, that it demands an estimate by the court, "necessarily based on conjecture, as to what people generally feel."
In Re Edgar, 253 F. Supp. 951, 953 (E.D. Mich. 1966). The United States Supreme Court has written of the term's ambiguity:
 The term "good moral character" has long been used as a qualification for membership in the Bar and has served a useful purpose in this respect. However the term, by itself, is unusually ambiguous. It can be defined in an almost unlimited number of ways for any definition will necessarily reflect the attitudes, experiences, and prejudices of the definer. Such a vague qualification, which is easily adapted to fit personal views and predilections, can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law.
Konigsberg v. State Bar of California, 353 U.S. 252, 262, 263
(1957). It seems clear, then, that the evaluation of a person's "good moral character" as insufficient to qualify that person to obtain a license for employment should be approached with caution.
Frequently, legislatures provide that prior criminal records may be a factor in determining whether an individual is of "good moral character." This has created difficulty for former offenders who seek employment. A comment in a 1970 article from the Cornell Law Review describes these difficulties:
 More than fifty million people in the United States have some form of criminal record. No doubt, most had only minor conflicts with the law and are today socially adjusted and employed. For these the shadow of prejudice may lurk in their minds only. But for those with more serious records, especially for those who have served prison sentences, prejudice and legal barriers regularly deny employment opportunities. Economic then combines with discrimination to become the chief causative factor sending one in three of the group back to crime. *Page 207 
 Where private prejudice does not make the ex-offender unemployable, the state may. Approximately sixty occupations in California require state licenses. Thirty-nine of the licensing laws permit denial, revocation, or suspension for conviction of a felony or of an offense involving moral turpitude. All states and a number of municipalities have similar laws. Licensed activity necessary to employment, such as driving, is frequently forbidden after conviction.
. . . .
 License denials and revocations have been upheld under these laws whether the statute specifically requires such action or merely outlines a test such as "good moral character", "inspire confidence", or "good repute." Similarly, unless the statute specifically provides otherwise, courts seem unconcerned whether the crime on which the denial is based is in any way related to the licensed occupation.
Comment, Employment of Former Criminals, 55 Cornell L. Rev. 306, 308, 309 (1970).
The Legislature of the State of Wisconsin has seen fit to make an effort to remedy the problems highlighted by the foregoing quotation. It has enacted sec. 111.32 (5)(h), Stats., supra, which has limited the circumstances in which prior criminal convictions may be considered. Along with the enactment of this section, the Legislature mandated that certain statutes be amended so that where conviction of criminal activity formerly would have been an automatic bar to receipt of the benefit conferred by the statute, now such benefit cannot be withheld without consideration of the effect of the anti-discrimination statute. See, e.g., secs. 176.05 (9), Stats. (relating to licenses and permits for the sale of intoxicating liquor); sec. 343.65 (2), Stats. (relating to denial of driving instructor's license); and sec. 450.02 (7)(a), Stats. (relating to revocation of registration as a pharmacist). In other words, it appears that the Legislature is attempting to clear away insofar as possible the legal barriers to future employment for former offenders.
Nevertheless, certain exceptions to the prohibition on discrimination remain. The exception relevant to the instant inquiry is that found in sec. 111.32 (5)(h)2.b., which allows employment or licensing discrimination against former offenders if the circumstances of *Page 208 
the offense "substantially relate to the circumstances of the specific job or licensed activity." The Wisconsin courts have not yet had an opportunity to identify what types of offenses substantially relate to bartender licensing. Although convictions for many types of offenses could arguably relate to such licensing, the policy behind the antidiscrimination statute militates against any automatic disqualification of applicants with criminal records. The thrust of the statute indicates that all of the information presented by the applicant, including but not limited to the former offense, should be considered by the licensing agency.
Federal courts, in judging the effect of prior convictions on an alien's "good moral character" sufficient to entitle him to naturalization, have found even the most serious offenses not indicative of a bad moral character, if there are mitigating circumstances, such as intervening length of time between offense and application, and record of rehabilitation during the intervening period, see, Annot., "Naturalization: Good Moral Character," 22 ALR 2d 240 (1952). Thus, when considering applications of former offenders for licenses pursuant to sec. 66.054 (11), Stats., such factors as the nature and number of offenses, the circumstances of the offense, the severity of the offense, the time intervening since the offense and any and all information evidencing rehabilitation of the offender, including job history and reputation in the community should be reviewed. Only then can an informed, nondiscriminatory decision be made as to the substantial relation of the conviction to the circumstances of the licensed activity and the applicant's good moral character.
BCL:PM-H *Page 209